**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

IN RE: COUNTRYWIDE FINANCIAL CORP.       CASE NO: 3:08-MD-01998
CUSTOMER DATA SECURITY BREACH      MDL No. 1998
LITIGATION
_____

This document relates to:

ALL ACTIONS

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Settling Parties' Second Amendment to the

Settlement Agreement (Docket #94).  The Holmes Plaintiffs have responded (Docket #96).  The

Martin Plaintiffs have responded (Docket #97).  The Settling Parties filed a Memorandum in

Further Support of Revised Proposed Notice Plan (Docket #102).  The Holmes Plaintiffs filed a

sur-reply (Docket #103).  The Settling Parties filed a Third Amendment to Settlement

Agreement (Docket #105).  The Settling Parties also filed a reply to the Holmes Plaintiffs' sur-

reply (Docket #106).  This matter is now ripe for adjudication.  The Court, having reviewed the

record and being otherwise sufficiently advised, certifies the matter as a class action for

settlement purposes and preliminarily approves the settlement agreement.

**BACKGROUND**

On January 21, 2009, Plaintiffs Thomas A. Munz, Scott Gregg, Matthew B. Martin,

Edmond Moses, Harold L. Mooney, Laila Elkhettab, Jay Gaumer, and Kim Wickman filed a

Motion for Settlement, which requested class certification, preliminary approval of the

settlement and notice plan, and the setting of a final fairness hearing.  The Proposed Settlement

resulted in objections being filed by the Holmes Plaintiffs, the Martin Plaintiffs, and the

Weber/Silverbach Plaintiffs.

The Court issued an Order on the Settling Plaintiffs' Motion on June 30, 2009. That Order expressed that the Court was prepared to grant preliminary approval of the settlement with regards to the 2.4 million proposed class members who received a letter from Countrywide concerning the data breach, but the proposed notice plan was inadequate for the remaining class members since it did not satisfy the requirement of Fed. R. Civ. P. 23(c)(2)(B) that individual notice be given "to all members who can be identified through reasonable means."

Settling Parties filed a Second Amendment to the Settlement Agreement on July 24, 2009. This amendment proposes a Revised Proposed Notice Plan, which replaces the previously-filed and inadequate Proposed Notice Plan. The Holmes and Martin Plaintiffs filed objections to the new Plan. Settling Parties also filed a Third Amendment to the Settlement agreement on September 4, 2009, which amended the definition of the Settlement Class. The Court is now prepared to review the issues of class certification, appointment of class counsel, preliminary approval of the settlement and notice plan, and setting of a final fairness hearing.

## ANALYSIS

## I.  Class Certification

A district court has broad discretion in certifying a class action, but "it must exercise that discretion within the framework of Rule 23." *Coleman v. General Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002). "The party seeking the class certification bears the burden of proof." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). First, the moving party must "satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation." *Coleman*, 296 F.3d at 446; *see* Fed. R. Civ. P. 23(a). The district court must conduct "a rigorous analysis" to ensure that "the prerequisites of Rule 23(a) have been satisfied."

2

*Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982); *see also Ball v. Union Carbide Corp.*, 385

F.3d 713, 727 (6th Cir. 2004); *In re Am. Med. Sys.*, 75 F.3d at 1078-79. A court may not certify

a class that fails to satisfy all four prerequisites. *Ball*, 385 F.3d at 727. Rule 23 requisites are

not relaxed in the settlement context. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620

(1997). The Court should apply the Rule 23 analysis independent of a "fairness" analysis. *Id.* at

621-22.

Second, in addition to satisfying 23(a)'s prerequisites, the moving party "must

demonstrate that the class fits under one of the three subdivisions of Rule 23(b)." *Coleman*, 296

F.3d at 446; Fed. R. Civ. P. 23(b); *see also Ball*, 385 F.3d at 727; *Sprague v. Gen. Motors Corp.*,

133 F.3d 388, 397 (6th Cir.1998) (en banc). Here, Settling Plaintiffs claim class certification is

appropriate under 23(b)(1) and 23(b)(3).

In their Third Amendment to the Settlement Agreement, Settling Parties propose that the

"Settlement Class" be defined as follows:

> [A]ll Persons in the United States who: (1) received a letter from Countrywide
> anytime from August 2, 2008 to and including November 2, 2008, notifying them
> that their personal information was involved in an alleged theft committed by a
> Countrywide employee; or (2) who obtained a mortgage from Countrywide or
> whose mortgage was serviced by Countrywide prior to July 1, 2008.
> Countrywide, for this purpose, does not include Bank of America. Excluded from
> the definition of the Settlement Class are (i) Countrywide and its officers and
> directors; (ii) the Court presiding over any motion to approve this Settlement
> Agreement; (iii) any Person or entity named as a defendant in any of the pending
> lawsuits in the Litigation; and (iv) those Persons who timely and validly request
> exclusion from the Settlement Class. The Settling Parties agree that the definition
> of the Settlement Class contained herein may be modified as required, if at all, to
> comport with further review and confirmatory discovery.

At the hearing held by the Court on March 19, 2009, Settling Plaintiffs stated that the Settlement

is intended to cover any breaches that occurred during the relevant time period, i.e., it is not

3

limited to breaches caused only by the Rebollo incident.[1]  The Holmes Plaintiffs oppose certification of the settlement class.  They argue specifically that the proposed class does not meet the adequacy requirement of Rule 23(a)(4).  The Court will discuss each of the Rule 23 requirements in regards to this proposed Settlement Class.

### A.      *Rule 23(a) Requirements*

1.      Numerosity

The first requirement for class certification is that "the class be so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "There is no strict numerical test for determining impracticability of joinder." *In re American Med. Sys. Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). "There is no automatic cut-off point at which the number of plaintiffs makes joinder impractical, thereby making a class-action suit the only viable alternative. However, sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *Bacon v. Honda of Amercia Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (internal citations omitted). In this case, all parties agree that the proposed class contains millions of members. Given this, the Court finds that the Rule 23(a)(1) requirement is met.

2.      Commonality

The second requirement for class certification is that "there are questions of law or fact

---

[1]      THE COURT: So the cause of the breach is somewhat irrelevant. It's just when it occurred, and they're included in the class?

MR. BARNOW: Yes.  Yes, because the damage - - the idea is to protect the consumers regarding the damage they could suffer from a breach from the failure of Countrywide to secure their information in their system.

common to the class." Fed. R. Civ. P. 23(a)(2). "Although Rule 23(a)(2) speaks of 'questions' in

the plural, . . . there need only be one question common to the class." *Sprague*, 113 F.3d at 397.

"It is not every common question that will suffice, however; at a sufficiently abstract level of

generalization, almost any set of claims can be said to display commonality." *Id.* What the Court

must look for "is a common issue the resolution of which will advance the litigation." *Id.*

All class members had their private information stored in Countrywide's databases at the

time of the data breach.  Settling Plaintiffs assert several common questions of law and fact

relating to that breach: whether Countrywide acted negligently in collecting and storing

Settlement Class Members' Private Information; whether Countrywide is a consumer reporting

agency as defined by 15 U.S.C. § 1681a; whether Countrywide violated the Fair Credit

Reporting Act, 15 U.S.C. § 1681 *et seq.*; whether Representative Plaintiffs and other members of

the Settlement Class have sustained damages, and, if so, the proper measure of those damages;

and, whether Representative Plaintiffs and other members of the Settlement Class should be

awarded statutory damages.  The Court agrees with Settling Plaintiffs that above-listed common

questions of law and fact exist, and resolution of these questions would have advanced the

litigation in this case.  Therefore, the Court finds that the Rule 23(a)(2) requirement is met.

        3.     Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are

typical of the claims or defenses of the class."  This typicality prerequisite "determines whether a

sufficient relationship exists between the injury to the named plaintiff and the conduct affecting

the class, so that the court may properly attribute a collective nature to the challenged conduct."

*Sprague*, 133 F.3d at 399 (citing *Am. Med. Sys.*, 75 F.3d at 1082).  "A claim is typical if 'it arises

from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *Am. Med. Sys.*, 75 F.3d at 1082).  "[F]or the district court to conclude that the typicality requirement is satisfied, 'a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law.'" *Id.*  (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 n.31 (6th Cir. 1976)).  On the other hand, a claim, if proven, is not typical if it would only prove the named plaintiff's claim.  *See Sprague*, 133 F.3d at 399.

Settling Plaintiffs assert that the typicality requirement is met because all class members had their private information compromised, and their claims arise from the same course of uniform conduct of Countrywide.  The Court agrees that this requirement is met.  The proposed class members were all in a position whereby Countrywide may have negligently handled their private information. Thus, there is a sufficient relationship between the injuries to the Representative Class Members, and the conduct which affects the entire class.  The claims of the Representative Class Members are typical of those that would be brought by all class members, and Rule 23(a)(3) is satisfied.

4.    Adequacy of Representation

The fourth requirement for class certification is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "There are two criteria for determining whether the representation of the class will be adequate: 1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel."

6

*Senter v. General Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between the named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997).

Settling Plaintiffs state that the Representative Class Members' interests do not conflict with the interests of any other class members because they all seek relief from the theft of their private information. All parties who suffer identity theft losses will have the opportunity to submit claims until October 31, 2012. Holmes Plaintiffs argue, however, that there is an inherent conflict of interest when combining presently injured plaintiffs with future interests, and that these future plaintiffs were not adequately represented in the settlement negotiations. Holmes Plaintiffs further assert that none of the Representative Class Members are presently injured claimants.

In support of their argument, Holmes Plaintiffs cite to *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). *Anchem* was a mass tort case involving asbestos exposure in which the representative class members had suffered diverse medical conditions, yet acted on behalf of the class as a whole (rather than acting on behalf of subclasses). The Court found that those who were presently injured had the critical goal of "generous immediate payment," and that this goal conflicted with the interests of those plaintiffs who had only been exposed and may one day become future claimants (including the unborn). *Id.* at 626. Holmes Plaintiffs argue that in a similar way, the settlement in this action would bind persons who may experience future identity theft, and that the interests of these future plaintiffs are, therefore, not adequately represented.

7

Settling Plaintiffs argue that *Amchem* is distinguishable from the present case.  First, a mass tort case such as the one in *Amchem* often involves long latency periods in which injuries may be discovered decades later.  Settling Plaintiffs argue that this case involves a consumer class action case with a more objectively based class, in which economic damages already exist for all class members.  Settling Plaintiffs assert that all class members have been injured, either from the risk of identity theft, or also from intentional or negligent violations of the Fair Credit Reporting Act, negligence, breach of implied contract, and violations of various consumer protection statutes.  Therefore, none of the class members are merely "future victims."  Finally, Settling Plaintiffs believe the Holmes Plaintiffs' objection would prevent consumers of the right to successfully bring an action for data breach, unless they had suffered identity theft damages.

The Court notes that the Representative Class Members are members of the class, and possess the same interests as all other members of the class.  All class members have been subjected to the same alleged conduct by Countrywide whereby private information was compromised, and the impact of this conduct has already or possibly will produce a similar result for all members.  The Court does not shy away from the fact that, at present, not all class members have suffered the same injury.  But unlike an asbestos mass tort action where unknown plaintiffs may develop symptoms decades later, this action involves an objectively identifiable class.  Class members who are fearful of the possibility of future identity theft will have been given notice of the settlement and have the opportunity to opt out.  *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 269 (2nd Cir. 2006); *see also McLaughlin on Class Actions: Law and Practice* § 4.02 ("There is no *per se* prohibition against certifying a single class including both presently injured and future claimants.").  In addition, persons who were non-notified,

8

unsuccessful mortgage applicants are not included in the Settlement Class, and therefore are not precluded from bringing a claim should there be any later discovery of identity theft. Finally, the Representative Members have demonstrated their adequacy in pursuing this claim and entering into settlement negotiations in order to protect all class members from the possibility of future identity theft.

The Court must also look to the adequacy of Plaintiffs representation "to determine whether class counsel are qualified, experienced and generally able to conduct the litigation." *Stout v. J. D. Byrider*, 228 F.3d 709, 701 (6th Cir. 2000). Settling Plaintiffs' Counsel assert extensive experience in class litigation, including in the area of data breaches. Courts have previously approved class counsel with experience in conducting class actions as adequate . *See, e.g., Smith v. Ajax Magnethermic Corp.*, 2007 WL 3355080, at *4 (N.D. Ohio Nov 7, 2007). Settling Plaintiffs' Counsel have also provided the Court with resumes. The Court finds that the Rule 23(a)(4) requirement is met.

### B.    *Rule 23(b) Requirements*

In addition to satisfying the requirements of Rule 23(a), "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614. Settling Plaintiffs assert that the proposed class satisfies the requirements of Rule 23(b)(1)(A) and Rule 23(b)(3).

### 1.    Rule 23(b)(1)(A)

Rule 23(b)(1)(A) is satisfied if "prosecuting separate actions by . . . individual class members would create a risk of . . .inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party

opposing the class . . . ."  Fed. R. Civ. P. 23(b)(1)(A).  Rule 23(b)(1)(A) "'takes in cases where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners).'" *Amchem*, 521 U.S. at 614 (quoting Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I), 81 Harv. L.Rev. 356, 375-400 (1967)).

Settling Plaintiffs argue that a class action in this case will eliminate any concerns about inconsistent judgments.  The Court finds that the possibility of inconsistent or varying adjudications does exist in this case in light of the volume of potential plaintiffs. Rule 23(b)(3), however, provides a stronger argument for class certification, and the Court addresses that portion of the rule in more detail below.

        2.        Rule 23(b)(3)

The Rule 23(b)(3) predominance requirement parallels the Rule 23(a)(2) commonality requirement in "that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1084 (6th Cir. 1996). "To satisfy the predominance requirement in Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof . . . predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (internal quotation marks and citation omitted).

The Court must determine if the questions common to the class are "at the heart of the litigation." *Powers v. Hamilton County Public Defender Com'n*, 501 F.3d 592, 619 (6th Cir.

2007). "[T]he mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988). "The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001). "Common questions need only predominate: they need not be dispositive of the litigation." *Id.*

The Court finds that the common questions in this case predominate over individual issues. Whether Countrywide's conduct (before and during the theft of Plaintiffs' private information) violated the various laws alleged in the Complaints is a question that is common to all class members. The proof required focuses on Defendant's conduct, not on the conduct of individual class members. Without a determination on this common question, there would be no recovery for any of the class members. "There are no bright lines for determining whether common questions predominate. Instead, considering the facts of the case presented, a claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis." *In re Cardizem*, 200 F.R.D. at 307 (citing *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)). The generalized evidence available in this case, whether Countrywide acted improperly, serves to prove or disprove a common, class-wide question.

Although there are variations in the damages claims of each class member and their appropriate amounts of recovery, these issues are predominated by the main issue of fault. In addition, Settling Plaintiffs point out that the amount of damages incurred by individual class

11

members would be insufficient to justify pursuing individual actions, making a class action a

valuable tool for all class members.  Therefore, the Court finds that the common questions in this

case are not overwhelmed by the individual issues, and a class action is appropriate.  The

requirement of Rule 23(b)(3) is satisfied by the proposed class.

The Court finding all of the requirements of Rule 23(a) and (b) to be satisfied, the

proposed class is hereby certified for settlement purposes.

## II.    Appointment of Class Counsel

Federal Rule of Civil Procedure 23(g) requires that the Court appoint class counsel.  In

making that determination, the Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in
> the action; (ii) counsel's experience in handling class actions, other complex
> litigation, and the types of claims asserted in the action; (iii) counsel's knowledge
> of the applicable law; and (iv) the resources that counsel will commit to
> representing the class.

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).  The Court may also "consider any other matter pertinent to

counsel's ability to fairly and adequately represent the interests of the class . . . ."  Fed. R. Civ. P.

23(g)(1)(B).  Settling Plaintiffs' counsel assert they have engaged in nearly five months of arm's

length negotiations in order to reach a settlement agreement with Countrywide.  In addition,

Settling Plaintiffs' counsel have worked on numerous class actions, and more particularly on

class actions involving claims of identity theft.  The Court finds that Settling Plaintiffs' counsel

will fairly and adequately represent the interests of the class, and appoints Ben Barnow, Barnow

and Associates, P.C., and Burton H. Finkelstein, Finkelstein Thompson LLP, as co-lead counsel

for the settlement class in this matter.

12

### III.    Preliminary Approval of the Settlement

Class actions may be settled or compromised only with the approval of the court and after

giving notice of the proposed settlement to the class.  Fed. R. Civ. P. 23(e).  There is a three-step

process that district courts follow when approving a class action settlement:

> (1) the court must preliminarily approve the proposed settlement, i.e., the court
> should determine whether the compromise embodied in the decree is illegal or
> tainted with collusion; (2) members of the class must be given notice of the
> proposed settlement; and (3) a hearing must be held to determine whether the
> decree is fair to those affected, adequate and reasonable.

*Tennessee Assoc. of Health Maintenance Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir.

2001).  In determining whether preliminary approval is appropriate, the Court should evaluate

whether the proposed settlement "appears to be the product of serious, informed, non-collusive

negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to

class representatives or segments of the class, and falls within the range of possible approval." *In

re Nasdaq Market-Makers Antitrust Litigation*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).[2]

The proposed settlement provides for a differentiation between those class members who

received letters from Countrywide from August 2, 2008 to November 2, 2008, and those class

---

[2]As the Court must determine whether the proposed settlement falls within the range of
possible approval, it is worth noting the factors the Court will consider when ultimately
determining whether the settlement is fair, reasonable and adequate. These include:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration
> of the litigation; (3) the amount of discovery engaged in by the parties; (4) the
> likelihood of success on the merits; (5) the opinions of class counsel and class
> representatives; (6) the reaction of absent class members; and (7) the public
> interest.

*Int'l Union, United Automobile, Aerospace & Agricultural Implement Workers of America v.
General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

13

members who did not receive a letter, but who obtained a mortgage or whose mortgage was serviced by Countrywide prior to July 1, 2008.  Settlement class members who received a letter were previously offered two years of credit monitoring.  Those who did not accept this offer receive from the settlement a two-year Credit Monitoring Protection Package, which includes the Experian "Triple Advantage" product, subject to the Experian Guarantee, and $25,000 in identity theft insurance through a third-party insurer.[3]  "Triple Advantage" monitors a person's credit files, sends email alerts of suspicious activity, and allows a person to check their credit reports. The Experian Guarantee guarantees the "Triple Advantage" product up to $1 million for identity theft losses.  For those class members who accepted Countrywide's original offer of two years of credit monitoring, the settlement shall add the Experian Guarantee to their already existing credit monitoring package.  All class members who received a letter from Countrywide are also entitled to reimbursement of out-of-pocket expenses resulting from the theft of their private information (such as costs for replacement checks, driver's license, etc.).  This reimbursement is subject to a cap of $1.5 million for the entire class.

All settlement class members are entitled to reimbursement from Countrywide of up to $50,000 per instance of identity theft, provided the loss is actual and unreimbursed, and more likely than not a result of the alleged theft of their private information through Countrywide. This alleged theft is not limited to the Rebollo incident.  To recover, class members must first exhaust available identity theft insurance options and the Experian Guarantee.  The availability

---

[3]Identity theft insurance and the Experian Guarantee are unavailable in some states. Therefore, settlement class members in New York shall receive the "Triple Advantage" product without insurance or the Guarantee.  Settlement class members in Puerto Rico and the U.S. territories shall receive the "Triple Advantage" product subject to the Experian Guarantee, but not the $25,000 in identity theft insurance.

of reimbursement covers losses from January 1, 2006 to July 31, 2012.  A $5 million fund is provided for reimbursement, and class members may claim additional identity theft losses beyond the $50,000 upon submission of a written claim.  The fund is to be distributed on a first valid claim received basis.  Reimbursed claimants are also entitled to one additional year of the Credit Monitoring Protection Package, whether they were originally sent a letter or not.

The settlement also includes a provision for dispute resolution, claims process assistance, and enhanced security measures to be taken by Countrywide.  In the event Countrywide denies a claim made as part of the settlement, the parties shall attempt to resolve the dispute on their own.  If the parties are unable to reach an agreement, the claimant has 45 days to submit his claim to an independent arbitrator from JAMS/Endispute.  The arbitrator shall conduct a hearing in the claimant's hometown, over the telephone, or by ruling on the papers submitted.  The JAMS/Endispute decision is final and binding.  If the claimant is successful, he shall receive an additional 10% on the face value amount of the award, plus attorneys' fees and costs.  Even if the claimant is unsuccessful, the costs of dispute resolution (excluding attorneys' fees and expenses) are paid for by Countrywide.  These payments by Countrywide do not come out of the $5 million capped fund.

Settlement costs associated with notice, claims administration, attorneys' fees, and incentive rewards are to be paid for by Countrywide and will not diminish class recovery.  Attorneys' fees and incentive rewards are subject to Court approval.  The Settling Plaintiffs seek an award of $3.5 million in attorneys' fees, and reasonable costs and expenses not to exceed $125,000.  Representative Plaintiffs shall receive $500, and Named Plaintiffs shall receive awards of $250.  At the time direct notice was to be given to the 2.4 million who received a letter

15

from Countrywide only, the estimated cost of notice was approximately $4 million.  Since direct notice has increased to 10.1 million individuals, the Court notes that this amount has likely increased significantly.

In exchange for the above, all settlement class members who do not opt-out of the class agree to release "any and all Claims . . . and any other form of relief that either has been asserted, or could have been asserted, by any settlement class member against Countrywide or its Related Entities based on, relating to, concerning or arising out of the alleged theft of the Private Information or the allegations, facts, or circumstances described in the Litigation."  Settlement class members who choose to opt-out do not receive any benefits under the settlement, but may still maintain their claim or file a claim against Countrywide in the future.

"At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval."  Federal Judicial Center, *Manual for Complex Litigation* § 21.63 (4th ed. 2009).  The Court first notes that there are no obvious deficiencies.  The differential treatment of those who received letters and those who did not is not undue.  The Court believes that enough proof has been presented to assert that those who received letters initially have a higher probability of being at risk of identity theft due to the Rebollo incident.  However, this settlement is not limited to only those involved in the Rebollo incident, so reimbursement is available for all class members.  In addition, this is not a mandatory class settlement.  Settlement class members are given the option to object to and/or opt-out of the settlement.  Finally, valid consideration is offered by both sides, and a proper system of checks and balances is in place.

The cost of litigation expenses, were this case to go to trial, is one factor that weighs in

favor of settlement.  Plaintiffs believe their case has merit, while Countrywide has aggressively maintained its position denying wrongdoing.  Plaintiffs are not guaranteed a sure success if they proceed to litigation.  Identity theft and its related legal liability theories present relatively new concepts in the realm of litigation.  As Countrywide asserted at the hearing, these claims may prove to be premature, in which case Plaintiffs would be entitled to nothing at the present time.  In addition, due to the sensitive nature of the facts of this case, litigation and appeals may only lead to further injury and increased attorney's fees.  The proposed settlement agreement provides for a reasonable solution that properly addresses the complications of identity theft.

As to the scope of the release, the Court believes it is fair in light of the allegations.  Of the 35 complaints filed and available to the Court,[4] 26 of those complaints allege violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq* ("FCRA").  The FCRA serves to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ."  15 U.S.C. § 1681(b).  Willful failure to comply with any requirement of the FCRA may result in civil liability for actual damages sustained and statutory damages ranging from $100 to $1,000.  15 U.S.C. §1681n(a)(1)(A).  Actual damages are also available for negligent noncompliance.  15 U.S.C. § 1681o(a)(1).  Settling Plaintiffs allege that Countrywide, as a consumer reporting agency, failed to maintain reasonable procedures to limit the furnishing of consumer reports to the only permissible purposes under 15 U.S.C. § 1681e.  They allege that disclosure of consumer information to unauthorized third

---

[4]The Complaint filed in Case No. 3:08-cv-641 was inaccessible.

parties is not a permissible purpose.

The thrust of this argument is that Countrywide's entire procedure for storing the settlement class members' confidential information did not comply with the FCRA requirements. Therefore, the FCRA violation was ongoing; it is not necessarily related to one single incident. For this reason, Settling Parties properly include a release of all claims of identity theft within the relevant time period, not just those related to the Rebollo incident.  If the settlement release were limited to claims arising only out of the Rebollo incident, there would not be a proper release of all claims asserted.  Even if most of the 17 million settlement class members' information was never accessed by Rebollo or illegally disseminated, it was still in the database that Settling Plaintiffs argue was maintained in violation of the FCRA.

The Holmes and Martin Plaintiffs have raised several other objections to the Settlement Agreement, although the Court believes only two merit discussion here.  The first is a matter of collusion and disproportionate attorneys' fees.  The second is the lack of pre-settlement discovery.  Both factors are important to the Court's final approval of the settlement, and, therefore, shall be discussed briefly in this preliminary approval.

The Court does not find fraud or collusion in the present case.  Countrywide and Settling Plaintiffs' attorneys acknowledge months of arm's length negotiations.  There is no evidence of fraud.  The fact that Settling Parties filed a settlement agreement shortly after transfer to this Court is not necessarily proof of collusion.  "The timing of a settlement by itself does not establish collusion."  *Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of America v. General Motors Corp.*, 497 F.3d 615, 633 (6th Cir. 2007).

The attorneys' fees sought are consistent with typical payout amounts for class action

18

settlements.  Settling Plaintiffs plan to seek $3.5 million in attorneys' fees, which are distributed separately from the funds dedicated to the class.  The Court acknowledges that this number is high, especially in comparison to the capped funds available to the class members.  In fact, $3.5 million is more than 50% of the available $6.5 million set aside for class members.  However, the Court must also factor in the additional consideration Countrywide has given.  For instance, Countrywide argues that it must pay for the credit monitoring package for each class member of the 2.4 million who opts to receive it.  Although it is true that Countrywide once made substantially the same offer to the same 2.4 million people, the Court acknowledges that Countrywide is under no duty to make this offer again to those who originally refused it.  The cost of providing the credit monitoring service could be small or great, depending on acceptance rates.  Approximately 20% of the 2.4 million accepted Countrywide's first offer of free credit monitoring.  If another 10% accept the second time around (which the Court does not believe is an unreasonable estimate), at a cost to Countrywide of $37 per person, Countrywide could potentially pay an additional $7 million.  Adding the $6.5 million fund for class members and the potential costs of $7 million for the credit monitoring package offer, plus the $3.5 million for attorneys' fees, the monetary amount for attorneys' fees is about 20% of that total.  The Martin Plaintiffs acknowledged at the preliminary approval hearing that the benchmark in class actions is 25%.  This is generally true in cases of a common fund, where the attorneys' fees are taken out of that fund.  *See, e.g.*, *Fournier v. PFS Investments, Inc.*, 997 F. Supp. 828, 832 (E.D. Mich. 1998) ("The 'benchmark' percentage for this standard has been 25% [of the common fund], with the ordinary range for attorney's fees between 20-30%.").  The award of attorneys's fees in this case does not diminish the settlement class recovery, which provides a greater benefit to the

19

class.  Therefore, the Court believes these figures are reasonable under the circumstances and do not demonstrate collusion.  The Court notes, however, that it is not yet granting final approval of the proposed attorneys' fees.

The Court also finds the Martin and Holmes Plaintiffs' objections to the lack of pre-settlement discovery unavailing.  "[F]ormal discovery is not necessary as long as (1) the interests of the class are not prejudiced by the settlement negotiations and (2) there are substantial factual bases on which to premise settlement."  *Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004).  Settling Plaintiffs and Countrywide have represented that they engaged in months of arm's length negotiations, the likelihood of success through litigation is questionable for the Plaintiffs, and expediency is beneficial in cases of identity theft.  Moreover, Settling Plaintiffs' counsel has experience in this area of the law, as well as in settling class actions of this sort.  "Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate, although the ultimate decision . . . is left to the Court."  *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 341 (E.D. Pa. 2007).  Mr. Barnow brought his expertise, along with his clients' information, to the negotiations table.  He also had knowledge of Rebollo's indictment and the surrounding circumstances.  Settling Plaintiffs later received approximately 6,000 pages of confirmatory discovery after filing the settlement agreement.  The Court believes there were enough factual bases, absent formal pre-settlement discovery, on which to premise settlement.

The Court preliminarily approves the settlement agreement.

## IV.    Approval of Notice Plan

The Court also approves the proposed notice plan as detailed in the Second Amendment

20

to the Settlement Agreement.  When a proposed class is to be notified of the certification of the class and the settlement of the action, the notice to the class must satisfy the requirements of Rules 23(c)(2) and 23(e) of the Federal Rules of Civil Procedure.  Under Rule 23(e), the Court must direct notice in a reasonable manner to all class members who would be bound by the proposal.  In addition, for any class certified under Rule 23(b)(3), the Court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts.  Fed. R. Civ. P. 23(c)(2)(B).  "To comport with the requirements of due process, notice must be 'reasonably calculated to reach interested parties.'"  *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008) (quoting *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 283 (6th Cir. 2005)).

The proposed class consists of approximately 17 million people.  The Settling Parties' first notice plan provided for direct notice to the 2.4 million class members who previously received a letter from Countrywide concerning the data breach.  The remaining class members were to be notified of the class action and settlement through publication notice.  In a prior Order, the Court expressed concern that this plan did not satisfy the requirements of Rule 23.  The Court stated, "In order to not send direct notice to a class member, the Court must be convinced that the class member cannot be identified through reasonable efforts."  Countrywide was likely to have current addresses for many of the class members whose mortgage was being serviced around the time of the data breach.  Therefore, the notice plan was insufficient.

The Second Amendment to the Settlement Agreement provides a Revised Notice Plan. This plan provides for direct notice in letter form to the 2.4 million class members who previously received a letter from Countrywide concerning the data breach.  In addition, all

current active mortgage customers of Countrywide as of July 8, 2009, will receive direct notice in the form of a postcard.  According to Countrywide, this second group totals approximately 7.8 million individuals in addition to the 2.4 million who received letters.  In sum, approximately 10.1 million settlement class members (59% of the total class members) will receive direct notice of the class action and settlement.  The remaining 41% of class members will receive notice by publication.  The notice plan also provides for an informational press release, website, post office box, and toll free phone number, from which class members may request further materials.  The plan estimates that 81.8% of settlement class members will be reached.  The Court believes the revised notice plan provides the best notice practicable under the circumstances.  Individual notice has increased substantially from the first proposed notice plan, and reasonable efforts were made to identify class members.  The Court believes this satisfies the requirements of Rule 23.

The notice plan proposes the use of four types of notices: a publication summary notice to appear in Sunday newspaper inserts and U.S. territories newspapers, a detailed notice that will be available upon request and on the website, a summary notice to be sent to the 2.4 million settlement class members who received a letter from Countrywide,[5] and a summary postcard notice that will be sent to the 7.8 million settlement class members who could be identified as active mortgage customers as of July 8, 2009.  These four proposed notices satisfy the requirements of Rule 23(c)(2)(B), which requires:

---

[5]Several versions of the summary notice exist to apprise different groups of their rights and available benefits.  For instance, settlement class members who already accepted Countrywide's offer of two years of credit monitoring will receive a summary notice with language that differs from the summary notice sent to those who did not accept Countrywide's offer.

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).  The detailed notice clearly satisfies each of these requirements.  In addition to describing the class action and providing the definition of the class, it states that class members may hire their own lawyer to represent them, that class members must mail a document to a specific address by a specific date in order to be excluded, and that the class member who is not excluded gives up "the right to sue the Defendants for all of the claims that this proposed settlement resolves."  The detailed notice also discusses the terms of the settlement, the various benefits available for different class members, how to sign up for the Triple Advantage credit monitoring program, how to make a claim, how to object to the settlement, the amount of the attorneys' fees and incentive awards, and the date and time of the Court's fairness hearing.

The summary notices, summary postcard notice, and publication notice provide necessary information and direct class members to a website or toll free number to obtain additional information.  Those who receive the postcard may also return the attached postcard in order to receive a detailed notice.   The summary notices also contain the terms of the settlement, how to sign up for credit monitoring or make a claim, the amount of the attorneys' fees and incentive awards, and the date and time of the fairness hearing.  The publication notice is similar to the summary notice, and will run in *Parade*, *USA Weekend*, and *American Profile*.  These publications are inserted into nearly 2,200 local Sunday newspapers, totaling a combined

23

circulation of approximately 65 million copies each week.  These newspapers also cover a wide geographic area, from large cities to small towns.  Additional notices will be placed in newspapers in the U.S. Territories.

The Court finds the proposed notices are reasonable and will approve them subject to the following conditions.  The proposed notices as presented are currently incomplete, as they are lacking in specific dates, times, and monetary amounts.  Also, the notices should be updated to define the class as expressed in the Third Amendment to the Settlement Agreement.  Therefore, Settling Parties shall submit to the Court final copies of the detailed notice, publication summary notice, summary notice, and summary postcard notice for final approval prior to mailing or publication.

## CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.    Pursuant to Rule 23, this matter is CERTIFIED as a class action for settlement purposes only on behalf of the following Settlement Class:

> [A]ll Persons in the United States who: (1) received a letter from Countrywide anytime from August 2, 2008 to and including November 2, 2008, notifying them that their personal information was involved in an alleged theft committed by a Countrywide employee; or (2) who obtained a mortgage from Countrywide or whose mortgage was serviced by Countrywide prior to July 1, 2008.  Countrywide, for this purpose, does not include Bank of America.  Excluded from the definition of the Settlement Class are (i) Countrywide and its officers and directors; (ii) the Court presiding over any motion to approve this Settlement Agreement; (iii) any Person or entity named as a defendant in any of the pending lawsuits in the Litigation; and (iv) those Persons who timely and validly request exclusion from the Settlement Class;

As provided in the Settlement Agreement, the definition of the Settlement Class contained therein may be modified as required, if at all, to comport with further review

24

and confirmatory discovery.  Any modification by the Settling Parties of the Settlement Class definition subsequent to the entering of this Order shall be presented to the Court for its approval.  As provided for in the Settlement Agreement, if the Court does not grant final approval of the settlement set forth in the Settlement Agreement, or if the settlement set forth in the Settlement Agreement is terminated in accordance with its terms, then the Settlement Agreement, and the certification of the Settlement Class provided for herein, will be vacated and the Litigation shall proceed as though the Settlement Class had never been certified, without prejudice to any party's position on the issue of class certification or any other issue;

2. The Court PRELIMINARILY APPROVES the settlement set forth in the Settlement Agreement as being within the range of fair, reasonable, and adequate, within the meaning of Rule 23 and the Class Action Fairness Act of 2005 ("CAFA"), subject to final consideration at the Final Fairness Hearing provided for below;

3. The form and manner of the Revised Proposed Notice Plan is APPROVED, conditional upon the necessary additions and corrections noted by the Court in this Opinion;

4. A Final Fairness Hearing is SET to be held before this Court on **July 19, 2010 at 9:00 a.m.**, in a courtroom (to be determined) of the United States District Court for the Western District of Kentucky in Louisville, Kentucky, to determine: (a) whether the settlement set forth in the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class; (b) whether a Judgment Order, as provided for in the Settlement Agreement, should be entered granting final approval of the settlement; and (c) whether, and in what amount, attorneys' fees, costs and expenses, and

Representative Plaintiff and other Named-Plaintiff incentive awards should be paid to an account established and/or directed by Co-Lead Settlement Class Counsel for distribution.  The Court may adjourn and/or continue the Final Fairness Hearing without further notice to Settlement Class Members;

5.  Settling Parties shall have until **April 22, 2010** to comply with the notice requirements as laid out in the Revised Notice Plan.  Settlement Class Members shall have until **June 22, 2010** to opt-out or file objections.  Parties shall have until **July 6, 2010** to file responses to objections.  All parties must submit to the Court and parties a list of witnesses and the subject matter to be discussed by **July 9, 2010.**  Parties must submit a list of any rebuttal witnesses by **July 16, 2010**;

6.  The Court hereby APPOINTS Ben Barnow, Barnow and Associates, P.C., and Burton H. Finkelstein, Finkelstein Thompson LLP, as co-lead counsel for the Settlement Class;

7.  Co-Lead Settlement Class Counsel, and Larry D. Drury, Larry D. Drury, Ltd.; Lance A. Harke, Harke & Clasby LLP; Sherrie R. Savett, Berger & Montague P.C.; Ralph K. Phalen, Ralph K. Phalen, Attorney at Law; Mark A. Maasch, Turner & Maasch, Inc.; Daniel C. Girard, Girard Gibbs, LLP; Justin G. Witkin, Aylstock, Witkin, Kreis & Overholtz, PLLC; Frank E. Piscitelli, Jr., Frank Piscitelli Co., L.P.A.; and E. Kirk Wood, Wood Law Firm LLC, are APPOINTED to the Plaintiffs' Executive Committee;

8.  Mark K. Gray, Franklin Gray & White, is APPOINTED as Plaintiffs' Liaison Counsel;

9.  The Court APPOINTS Plaintiffs Cody M. Dragon, Laila Elkhettab, Jay B. Gaumer, Scott Gregg, Matthew B. Martin, Harold L. Mooney, Edmond Moses, Thomas A. Munz, Michael J. Rich, and Kim Wickman as Representative Plaintiffs;

26

10.     The Court approves and APPOINTS Hilsoft Notifications, Souderton, Pennsylvania as

        Notice Specialist and Epiq Systems Class Action & Claims Solutions as Claims

        Administrator, as set forth in the Settlement Agreement;

11.     Countrywide shall comply with the obligation to give notice under CAFA, 28 U.S.C. §

        1715, in connection with the proposed settlement.  No later than 10 calendar days before

        the Final Fairness Hearing, counsel for Countrywide shall file with the Court one or more

        declarations stating that Countrywide has complied with its notice obligations under 28

        U.S.C. § 1715;

12.     As soon as is possible and no later than **April 22, 2010**, notice shall be issued consistent

        with the Revised Proposed Notice Plan submitted on July 24, 2009, and the Notice

        Specialist shall establish a dedicated settlement website, and shall maintain and update

        the website throughout the Claim Period, which will provide access to the Summary

        Notice, Notice, and Proofs of Claim form approved by the Court, as well as the

        Settlement Agreement.  The settlement website shall contain a question and answers

        section, with a link to a video presentation explaining the relevant terms of the settlement

        and how to properly fill out and submit the requisite claim forms and necessary

        documentation.  Additionally, the settlement website shall prominently display an

        appropriately recognized third-party verification on it (VeriSign, etc.) verifying the

        website's authenticity and legitimacy;

13.     The Court finds that compliance with the Revised Notice Plan is the best notice

        practicable under the circumstances, and constitutes due and sufficient notice of this

        Order to all persons entitled thereto and is in full compliance with the requirements of

Rule 23, applicable law, and due process;

14.     Prior to the Final Fairness Hearing, Co-Lead Settlement Class Counsel and Countrywide shall cause to be filed with the Court an appropriate affidavit or declaration with respect to complying with the Revised Proposed Notice Plan;

15.     Each Person wishing to opt out of the Settlement Class shall individually sign and timely submit a written notice of such intent to a designated Post Office Box established for said purpose, as set forth in the Notice.  The written notice must clearly manifest an intent to be excluded from the Settlement Class.  To be effective, written notice must be postmarked by **June 22, 2010**;

16.     All Persons falling within the definition of the Settlement Class who do not request to be excluded from the Settlement Class shall be bound by the terms of the Settlement Agreement, the Judgment Order entered thereon, and all Orders entered by the Court in connection with the settlement set forth in the Settlement Agreement.  All Persons who submit valid and timely notices of their intent to be excluded from the Settlement Class shall neither receive any benefits nor be bound by the terms of the Settlement Agreement;

17.     Settlement Class Members who qualify for and wish to submit a claim for any benefit under the settlement as to which a claim is required shall do so in accordance with the requirements and procedures of the Settlement Agreement.  All Settlement Class Members who qualify for any benefit under the settlement as to which a claim is required but fail to submit a claim therefor in accordance with the requirements and procedures of the Settlement Agreement shall be forever barred from receiving any such benefits, but with in all other respects be subject to and bound by the provisions of the Settlement

28

Agreement, the releases contained therein, and the Judgment Order.

18.    Each Settlement Class Member desiring to object to the settlement shall submit a timely written notice of his or her objection.  Such notice shall state: (i) the objector's full name, address, telephone number, and e-mail address; (ii) information identifying the objector as a Settlement Class Member, including (a) proof that they are a member of the Settlement Class (e.g., a Letter from Countrywide, mailed/emailed notice of the settlement, or evidence that they obtained a mortgage from Countrywide prior to July 1, 2008 or had their mortgage serviced by Countrywide prior to July 1, 2008), including documentation of any damages they claim to have incurred as a result of the alleged theft of their Private Information, if any, if they are objecting to any portion of the settlement dealing with reimbursement of Identity Theft losses and for which they believe they would have an existing claim, or (b) an affidavit setting forth, in as much detail as the objector can reasonably provide, either (1) that they received a Letter from Countrywide, or mailed/emailed notice, addressed to them, indicating that their Private Information may have been compromised, including the approximate date of said receipt, (2) that they obtained a mortgage from Countrywide prior to July 1, 2008, or (3) that they had their mortgage serviced by Countrywide prior to July 1, 2008; (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection; (iv) the identity of all counsel representing the objector; (v) the identity of all counsel representing the objector who will appear at the Final Fairness Hearing; (vi) a list of all persons who will be called to testify at the Final Fairness Hearing in support of the objection; (vii) a statement confirming whether the objector intends to personally appear

and/or testify at the Final Fairness Hearing; and (viii) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation);

19.   To be timely, written notice of an objection in appropriate form must be filed with the Clerk of the United States District Court for the Western District of Kentucky, Louisville Division, by **June 22, 2010**, and also served on both of the following: one of Proposed Co-Lead Settlement Class Counsel, Ben Barnow, Barnow and Associates, P.C., One North LaSalle Street, Suite 4600, Chicago, IL 60602, and, further, counsel for Countrywide, Mark S. Melodia, Reed Smith LLP, Princeton Forrestal Village, 136 Main Street, Suite 250, Princeton, NJ 08543-7839;

20.   All discovery and pretrial proceedings in this Litigation, other than confirmatory discovery provided for in the Settlement Agreement, are stayed and suspended until further order of this Court.  The Court further orders that Countrywide's time to answer or otherwise respond to the Complaints in all matters before this Court is extended without date;

21.   Pending the final determination of the fairness, reasonableness, and adequacy of the settlement set forth in the Settlement Agreement, no Settlement Class Member, either directly, representatively, or in any other capacity, shall institute, commence, or prosecute any of the Released Claims in any action or proceeding in any court or tribunal;

22.   Neither the Settlement Agreement nor the settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Settlement

Agreement or the settlement: (a) is or may be deemed to be, or may be used as any admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of Countrywide; or (b) is or may be deemed to be, or may be used as an admission of, or evidence of, any fault or omission of Countrywide, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

23.   In the event the Court does not grant final approval of the Settlement Agreement or the settlement set forth in the Settlement Agreement is terminated in accordance with its terms, the Settling Parties shall be restored to their respective positions in the Litigation, except that all scheduled litigation deadlines shall be reasonably extended so as to avoid prejudice to any Settling Party or litigant.  In such event, the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*.


SO ORDERED.


31