## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY

|  |  |  |
|---|---|---|
| IN RE: COUNTRYWIDE FINANCIAL CORP. CUSTOMER DATA SECURITY BREACH LITIGATION | ) ) ) ) ) | No.:  3:08-md-01998-TBR<br>MDL No. 1998<br><br>Honorable Thomas B. Russell<br>United States District Judge |
| This Document Relates to:<br>    All Actions | ) ) ) ) ) | |

## OBJECTOR THE PRIVACY RIGHTS CLEARINGHOUSE'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS AND MEMORANDUM OF LAW IN SUPPORT THEREOF

The Privacy Rights Clearinghouse ("PRC"), through its undersigned attorneys, respectfully moves for an award of attorneys' fees in the amount of $ 481,060.25 and costs of $14,574.99 to compensate its counsel[1] for services expended in materially improving and clarifying the terms of the settlement.  For the reasons set forth below, the requested award is reasonable in amount and is fully justified.  In support thereof the PRC states as follows:

## I.      PRELIMINARY STATEMENT

On June 24, 2010, the PRC filed a formal objection to the settlement agreement.  (Dkt #173).  Although the PRC continues to object to certain material terms of the settlement, to the extent it is granted final approval, the PRC has been instrumental in materially improving and

---

[1] Counsel for the PRC includes the law firms of Finkelstein & Krinsk, LLP, and The Poppe Law Firm and Parry, Deering, Futscher & Sparks, PSC who acted as local counsel on its behalf.

PRC MOTION FOR AWARD OF ATTORNEYS'
FEES AND COSTS AND MEMORANDUM IN
SUPPORT

clarifying the terms of the settlement.  The PRC now seeks to effectuate the purposes of Rule 23 of the Federal Rules of Civil Procedure[2] by seeking reasonable compensation for the benefits that it, through its counsel, conferred upon members of the Class.

## II.   RELEVANT BACKGROUND

On September 16, 2008, the PRC and William P. Martin filed a class action complaint in the Central District of California, Case No. CV08-06042.  This lawsuit was in response to letters distributed by Countrywide[3] in or about August 2008 ("Letter"), notifying 2.4 million mortgage customers that their private information (*i.e.*, names, addresses, mortgage loan numbers, social security numbers, and various other loan and application information) had been purloined by a Countrywide employee (Rebollo) for sale to a third party in violation of state and federal laws.

Similar lawsuits were filed across the country, most of which were transferred to this Court by the Judicial Panel on Multidistrict Litigation ("JPML") in December 2008 for consolidated pre-trial proceedings. Less than one (1) month later, on January 21, 2009, Settling Plaintiffs[4] filed papers requesting preliminary approval of a class-wide settlement of all proceedings before the

---

[2] Unless otherwise indicated, all subsequent references to Rules will be to the Federal Rules of Civil Procedure.

[3] For purposes of this Motion the term "Defendants" and/or "Countrywide" include Countrywide Financial Corporation ("CFC"), Countrywide Bank, FSB ("Countrywide Bank"), Countrywide Home Loans, Inc. ("Countrywide Home"), Full Spectrum Lending Division ("Full Spectrum"), and Bank of America Corporation ("BAC").

[4] The "Settling Plaintiffs" include Cody M. Dragon, Laila Elkettab, Jay B. Gaumer, Scott Gregg, Matthew B. Martin, Harold L. Mooney, Edmund Moses, Thomas A. Munz, Michael J. Rich, and Kim Wickman.

Court, the issuance of settlement notice, and the setting of a final fairness hearing ("Proposed Settlement") (Dkt # 7).[5]

In response to the Proposed Settlement and notice plan the PRC[6] launched an aggressive campaign to delay the Court's ruling on preliminary approval while it pursued discovery necessary to clarify the scope and size of the Class in relation to the benefits provided by the settlement and the legitimacy of the broad release.  As part of this effort, the PRC conducted extensive briefing over the course of eighteen (18) months outlining its concerns regarding the Proposed Settlement. *See, e.g.*, Dkt #7, 14, 31, 48, 63, 97, 101, 173.  The PRC's concerns were presented to the Court during the February 17, 2009 status conference, the March 19, 2009 hearing on preliminary approval of the Proposed Settlement, and on July 19, 2010 at the final fairness hearing.

The concerns raised by the PRC included:  (i) the lack of evidence establishing that the Proposed Settlement was fair, adequate and reasonable; (ii) the need to closely scrutinize the pre-certification settlement in order to evaluate whether the interests of all Class Members were adequately represented during the negotiation process; (iii) the true value of the settlement where only the 2.4 million Class Members who received a Letter were eligible to receive the credit monitoring and expense reimbursement relief; (iv) how and why the Class (and the release) was defined to include the additional 14.6 million individuals who did not receive a Letter and whether

---

[5]   In an attempt to promote the just and efficient conduct of the growing MDL and to substantially advance it toward resolution on January 6, 2009, counsel for the PRC sought appointment as interim class counsel pursuant to Rule 23(g) (Dkt # 5), and on February 2, 2009, moved for entry of Case Management Order No. 1 (Dkt #15).

[6]   The PRC launched this campaign in conjunction with plaintiffs William P. Martin, Quinzola J. Davis and Thomas M. Wardrop, referred to collectively as the "Martin Plaintiffs;" only the PRC filed an objection to the Proposed Settlement.

their information was in fact among that improperly downloaded and made available to third parties; (v) the adequacy of the notice plan where direct notice was to be provided only to those 2.4 million persons that received the Letter, notifying the remaining 14.6 million Class Members by publication; and (vi) failure of the proposed notice to disclose the amount of attorneys' fees and costs being sought by Settling Plaintiffs.

In response to a request by the PRC the Court ordered Settling Plaintiffs to share all discovery received from the defendants with counsel for the PRC, and all other counsel that so requested.[7]  (Dkt # 26).  This confirmatory discovery played an important role in clarifying the scope and size of the Class. Specifically, confirmatory discovery established that the 2.4 million Class Members that received a Letter from Countrywide were not the only ones whose private information was accessible by Rebollo and potentially disclosed to third parties, but that the remaining 14.6 million Class Members were also similarly affected.

The PRC's efforts also contributed to the Court initially denying preliminary approval of the Proposed Settlement based on its concern that the proposed notice plan failed to satisfy the due process requirements of Rules 23(c)(2) and 23(e).  (Dkt # 89).  In response, Settling Plaintiffs filed a second amendment to the Proposed Settlement and a revised notice plan.  (Dkt # 94).  The revised notice plan provided for direct notice in the form of a detailed notice packet being mailed to the 2.4 million Class Members that received the Letter, and direct notice in the form of a summary postcard being mailed to an additional 7.8 million persons (all currently active mortgage customers of

---

[7]  Settling Plaintiffs produced and counsel for PRC reviewed approximately 8,500 pages of confirmatory discovery.  *See* Declaration of Jennifer L. MacPherson in Support of Objector the PRC's Motion for Award of Attorneys' Fees and Costs ("MacPherson Decl.") at ¶ 4. Likewise, counsel for PRC participated in the deposition of CFC Sr. V.P., Craig Froelich, in Westlake Village, California, and BAC Sr. V.P., Christopher P. Higgins, in Charlotte, North Carolina. *Id.*

Countrywide as of July 8, 2009.)  *Id.*  A further extension of the PRC's efforts was set forth in the third amendment to the Proposed Settlement (Dkt #105), which modified the Class definition and clarified the scope of the Class.

The above demonstrates the PRC's extensive efforts to ensure that the rights of absent Class Members were adequately protected during the precertification phase of these proceedings and during the negotiation of the Proposed Settlement.  If the Court grants final approval to the Proposed Settlement it will be the result in large part, of counsel for the PRC's persistence, which enabled it to determine that the Proposed Settlement was fair, adequate and reasonable as to all Class Members and that the notice provided to Class Members satisfied due process.

## III.   ARGUMENT

### A.   COUNSEL FOR AN OBJECTOR WHOSE EFFORTS IMPROVE OR CLARIFY A  SETTLEMENT ARE ENTITLED TO REASONABLE COMPENSATION

Attorney fee awards to counsel for objectors in a class action settlement are within the sole discretion of the district court. In re Cardinal Health, Inc. Sec. Litig., 550 F.Supp.2d 751, 753 (S.D. Ohio 2008) (*citing* Bowling v. Pfizer, Inc., 102 F.3d 777, 779 (6th Cir. 1996)).  An award of attorneys' fees for an objector does not require that an economic benefit to the class occur, or that the objection influence the court's decision.  *See* Howes v. Atkins, 668 F.Supp. 1021, 1027 (E.D. Ky. 1987) ("Objectors' counsel ably performed the role of devil's advocate in this litigation and is deserving of a fee award for this service, even though the settlement was not improved."); Park v. Thomson Corp., 633 F.Supp.2d 8, 11 (S.D.N.Y. 2009). "[S]ome courts have ... rewarded objectors' counsel for advancing non-frivolous arguments and transforming the settlement hearing into a truly adversarial proceeding." *Id.* (internal quotation marks omitted).  *See, e.g.*, Denney v. Jenkens &

Gilchrist, 230 F.R.D. 317, 354 (S.D.N.Y.2005) *aff'd in part*, *vacated in part on other grounds*, 443 F.3d 253 (2d Cir. 2006) (awarding fees to objectors' counsel, finding that objections "served to generate debate and focus the issues before the Court[ ]" and "conferred a benefit on the class by forcing the settling parties to clarify the judgment credit provision, removing certain ambiguities that might have worked to the detriment of class members in subsequent proceedings.")

For instance, in awarding objectors $100,000 (10% of the settlement fund) in attorneys' fees and costs the Court in Howes concluded:

> That counsel for the objectors made a vigorous attack on the settlement and pursued extensive discovery, without being able to adduce any evidence of fraud or collusion or any reason for the modest settlement except that the evidence had not developed as plaintiffs' counsel had first anticipated, made the court much more comfortable in approving the settlement. Objectors' counsel ably performed the role of devil's advocate in this litigation and is deserving of a fee award for this service, even though the settlement was not improved. A fee award for this service is justified. *See* Fisher v. Procter & Gamble Manufacturing Company, 613 F.2d 527, 547 (5th Cir.1980); Frankenstein v. McCrory Corporation, 425 F.Supp. 762, 767 (S.D.N.Y.1977); White v. Auerbach, 500 F.2d 822, 828 (2nd Cir.1974); Whittemore v. Sun Oil Co., 58 F.R.D. 624, 627 (S.D.N.Y.1973).

*Id.*, 668 F.Supp. at 1027.

Here, the work of counsel for the PRC benefited the Class and the Court. Material benefits include counsels' pursuit, review and participation in confirmatory discovery which was instrumental in enabling the parties and the Court to properly evaluate whether the Proposed Settlement satisfied the heightened pleading standard applicable to precertification settlements. Confirmatory discovery assisted in clarifying the size and scope of the Class which resulted in a third amendment to the Proposed Settlement modifying the Class definition. For instance, confirmatory discovery established that Rebollo had access to the private information of not only the 2.4 million Class Members that received a Letter from Countrywide, but also an additional 14.6

million individuals.   In addition, PRC's arguments forced the settling parties to justify - on the record - how virtually every term of the Proposed Settlement was fair, reasonable, and adequate to all Class members, *i.e.*, the 2.4 million who received the Letter and the remaining 14.6 million who did not.   Further, briefing and arguments raised by counsel for the PRC highlighted the inadequacy of the proposed notice plan resulting in the Court initially denying preliminary approval until a revised notice plan was proposed. The revised notice plan provided for direct notice to an additional 7.8 million Class Members.

### B.        THE REQUESTED FEE AND COST AWARD IS REASONABLE

Counsel for PRC expended 1,032.33 hours for a combined overall lodestar of $ 481,060.25, and incurred $ 14,574.99 in total costs on behalf of the PRC in its effort to ensure that the rights of absent Class Members were adequately protected during the precertification phase of these proceedings, that the Proposed Settlement was fair, reasonable and adequate, and that the notice plan satisfied due process.   These efforts involved: (1) scrutinizing the Proposed Settlement and notice plan; (2) researching and filing fifteen (15) motions highlighting the inadequacies, inconsistencies and ambiguity inherent to the Proposed Settlement and notice plan, including responsive briefing; (3) reviewing voluminous briefing conducted by all parties to this litigation on issues relating to the Proposed Settlement and notice plan; (4) pursuing confirmatory discovery and attending, preparing for and participating in the depositions of CFC's Sr. V.P in Westlake Village, California, and BAC's Sr. V.P. in Charlotte, North Carolina; (5) preparing for and attending the February 17, 2009 status conference, the March 19, 2009 hearing on preliminary approval of the Proposed Settlement, and the July 19, 2010 final fairness hearing; and (6) coordinating with counsel for the <u>Martin</u> Plaintiffs regarding the above activities.  *See* MacPherson Decl. at ¶ 4.

Given the complexity of this case, and the substantial benefits afforded the Class through the time and effort expended by counsel for the PRC, an award of a portion of the requested fee in the amount of $ 495,635.24, is reasonable.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons counsel for Objector the PRC respectfully requests that the Motion for an Award of Attorneys' Fees and Costs be granted.

Dated:  August, 20, 2010                    Respectfully submitted,

By: <u>s/ Mark L. Knutson_____</u>
    Mark L. Knutson, Esq.

Jeffrey R. Krinsk
Jennifer L. MacPherson
FINKELSTEIN & KRINSK, LLP
501 West Broadway, Suite 1250
San Diego, California   92101
Tel:   (619) 238-1333
Fax:  (619) 238-5425
fk@classactionlaw.com

Hans G. Poppe
Warner T. Wheat
THE POPPE LAW FIRM
6004 Brownsboro Park Boulevard, Suite E
Louisville, Kentucky   40207
Tel:  (502) 895-3400
Fax:  (502) 895-3420
hans@poppelawfirm.com

Ron Parry

David Futscher
PARRY DEERING FUTSCHER & SPARKS, PSC
411 Garrard Street
P.O. Box 2618
Covington, Kentucky   41012
Tel:  (859) 291-9000
 rparry@pdfslaw.com

*Attorneys for Privacy Rights Clearinghouse*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 20, 2010, I electronically filed a true and correct copy of Objector the Privacy Rights Clearinghouses' Motion for Award of Attorneys' Fees and Costs and Memorandum of Law in Support Thereof, and Declaration of Jennifer L. MacPherson in Support with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

Dated: August 20, 2010                          _s/ Mark L. Knutson_____
                                                Mark L. Knutson

PRC MOTION FOR AWARD OF ATTORNEYS'        10
FEES AND COSTS AND MEMORANDUM IN
SUPPORT