**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

_____
                                   )
IN RE: COUNTRYWIDE FINANCIAL CORP.   )      CASE NO: 3:08-MD-01998
CUSTOMER DATA SECURITY BREACH       )      MDL No. 1998
LITIGATION                                )
_____ )


**REPRESENTATIVE PLAINTIFFS' MOTION FOR IMPOSITION**
**OF APPEAL BONDS AND INCORPORATED MEMORANDUM OF LAW**

Table of Contents

I.   Introduction..................................................................................................................1

II.  Requiring Objector Appellants to Post Appeal Bonds is Justified and Appropriate ...............2

     A.   Objector Appellants are Presumed to have the Financial Ability to Post a Bond ........4

     B.   The Appeals Lack Merit ...................................................................................4

     C.   Objector Appellants' Bad Faith and Vexatious Conduct Warrant the Imposition
          of the Requested Appeal Bonds......................................................................9

          1.   The Holmes Objectors..........................................................................9

          2.   Objectors Kelsey Foligno and Nicholas Foligno ................................13

          3.   Objector Baker ...................................................................................14

          4.   The Scott Objectors ...........................................................................15

          5.   The Silverbach Objectors ...................................................................16

     D.   A Significant Risk of Nonpayment Exists.....................................................17

III. The Appeal Bonds Should Total the Attorneys' Fees and Costs of Responding to the
     Objector Appeals, and the Amounts Requested are Reasonable ...........................................18

IV.  Conclusion ..................................................................................................................20

i

Table of Authorities

<u>Cases</u>

*Adsani v. Miller*,
   139 F.3d 67 (2d Cir. 1998)........................................................................................................4

*Barnes v. FleetBoston Fin. Corp.*,
   No. 1:01-cv-1039 (D. Mass. Aug. 22, 2006) ...................................................................3, 20

*Bowling v. Pfizer, Inc.*,
   102 F.3d 777 (6th Cir. 1996) ...................................................................................................8

*Capizzi v. States Res. Corp.*,
   No. CIV.A.02-12319-DPW, 2005 WL 958400 (D. Mass. Apr. 26, 2005)................................20

*Chiaverini, Inc. v. Frenchie's Fine Jewelry, Coins & Stamps, Inc.*,
   No. 04-CV-74891-DT, 2008 WL 2415340 (E.D. Mich. June 12, 2008)....................................19

*Conroy v. 3M Corp.*,
   No. 00-CV-2810 (N.D. Cal. Aug. 10, 2006)........................................................................3, 19

*Dewey v. Volkswagen of Am.*,
   No. 07-2249, 2010 WL 3018305 (D.N.J. July 30, 2010) ..........................................................14

*Farris v. Standard Fire Ins. Co.*,
   280 Fed. App'x 486 (6th Cir. 2008) ...................................................................................2, 18

*Fidel v. Farley*,
   534 F.3d 508 (6th Cir. 2008) ...................................................................................................7

*Gemelas v. Dannon Co., Inc.*,
   No. 1:08 CV 236, 2010 WL 3703811 (N.D. Ohio Aug. 31, 2010) ........................................3, 18

*In re AOL Time Warner*,
   No. 02 CV 5575 (SWK), 2007 WL 2741033 (S.D.N.Y. Sept. 20, 2007)....................................4

*In re Bridgeport Fire Litig.*,
   No. 05-20924 (Court of Common Pleas, Montgomery County, Pa., Feb. 27, 2009) .................12

*In re Cardinal Health, Inc. Sec. Litig.*,
   550 F. Supp. 2d 751 (S.D. Ohio 2008) ....................................................................................9

*In re Cardizem CD Antitrust Litig.*,
   391 F.3d 812 (6th Cir. 2004) .............................................................................................3, 18

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
No. MDL 1361, 2003 WL 22417252 (D. Me. Oct. 7, 2003) .......................................................3

*In re Currency Conversion Fee Antitrust Litig.*,
01 MDL 1409, 2010 WL 1253741 (S.D.N.Y. Mar. 5, 2010) ................................................17, 20

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
130 F.R.D. 366 (S.D. Ohio 1990) .......................................................................................8

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
No. Fed-09-586, -- A.2d --, 2010 WL 3633731 (Me. Sept. 21, 2010) ....................................6, 7

*In re Initial Pub. Offering Sec. Litig.*,
21 MC 92 (SAS), 2010 WL 2505677 (S.D.N.Y. June 17, 2010) ....................................4, 15, 17

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*,
No. 08-1999, 2010 WL 3310264 (E.D. Wis. Aug. 16, 2010) .....................................................14

*In re Lifelock, Inc. Mktg. and Sales Practices Litig.*,
MDL Docket No. 08-1977-MHM, 2010 WL 3715138 (D. Ariz. Aug. 31, 2010) .....................14

*In re: Lupron Mktg. and Sales Practices Litig.*,
228 F.R.D. 75 (D. Mass. 2005) .........................................................................................13

*In re: Pharma. Indus. Average Wholesale Price Litig.*,
MDL 1456, 2008 WL 53278 (D. Mass. Jan. 3, 2008) ........................................................12, 13

*In re Relafen Antitrust Litig.*,
No. 01-cv-12239 (D. Mass., Dec. 20 2005) ..........................................................................3

*In re Tyson Foods Inc. Chicken Raised Without Antibiotics Consumer Litig.*,
No. RDB-08-1982, 2010 WL 1924012 (D. Md. May 11, 2010) ..............................................14

*In re Vitamins Antitrust Litig.*,
10-7096, 2010 WL 3515696 (D.C. Cir. Sept. 2, 2010) .............................................................15

*Int'l Union, United Auto., Aerospace, & Agr. Implement
Workers of Am. v. Gen. Motors Corp.*,
497 F.3d 615 (6th Cir. 2007) ............................................................................................5

*Melancon v. Louisiana Office of Student Fin. Assistance*,
567 F. Supp. 2d 873 (E.D. La. 2008) .................................................................................16

*Moross Ltd. P'ship v. Fleckenstein Cap., Inc.*,
466 F.3d 508 (6th Cir. 2006) ............................................................................................5

iii

*Page v. A.H. Robins Co.*,
  85 F.R.D. 139 (E.D. Va. 1980) ............................................................................18

*Perry v. FleetBoston Fin. Corp.*,
  229 F.R.D. 105 (E.D. Pa. 2005) ..........................................................................16

*Rodriguez v. West Pub'g Corp.*,
  05-3222 (C.D. Cal. May 22, 2007) ......................................................................15

*Savaglio v. Wal-Mart Stores, Inc.*,
  835687-7, RG04178461 (Cal. Supr. Ct. Alameda County Mar. 25, 2010) ...............15

*Schied v. Davis*,
  08-CV-10005, 2008 WL 3852264 (E.D. Mich. Aug. 18, 2008)..................................4

*Sckolnick v. Harlow*,
  820 F.2d 13 (1st Cir. 1987).............................................................................3, 18

*Young v. New Process Steel, LP*,
  419 F.3d 1201 (11th Cir. 2005) .......................................................................3, 18

<u>Federal Rules and Statutes</u>

Fed. R. App. P. 7 ................................................................................................2, 19

Fed. R. App. P. 38 ..................................................................................................3

Fed. R. App. P. 39 ..............................................................................................3, 19

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................................7

15 U.S.C. § 1681n, o ..........................................................................................18, 19

28 U.S.C. § 1920 ..................................................................................................19

NOW COME Representative Plaintiffs, Cody M. Dragon, Laila Elkhettab, Jay B. Gaumer, Scott Gregg, Matthew B. Martin, Harold L. Mooney, Edmund Moses, Thomas A. Munz, Michael J. Rich, and Kim Wickman, individually and on behalf of the Settlement Class, by and through Co-Lead Settlement Class Counsel, Ben Barnow, Barnow and Associates, P.C., and Burton H. Finkelstein, Finkelstein Thompson LLP, and as their Motion for Imposition of Appeal Bonds and Incorporated Memorandum of Law, state as follows:

## I.      Introduction

On August 23, 2010, the Court entered its Order granting final approval of the settlement and Co-Lead Settlement Class Counsels' request for attorneys' fees, costs, and expenses, and incentive awards to Representative Plaintiffs and Named Plaintiffs. The Order was entered only after the Court held preliminary approval and final fairness hearings, in which all parties and objectors were given the opportunity to appear and address the Court. These rulings should have put an end to this protracted litigation and freed the parties to distribute the benefits of the settlement to the Settlement Class. *See In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.* [hereinafter "*Countrywide*"], Memo. Op. and Order, at 13 (W.D.K.Y. Aug. 24, 2010) [D.E. #297] ("This settlement provides safeguards that would not otherwise be available to millions of people, at a time when such measures are needed most."). But, this process has now been stopped by five appeals ("Objector Appeals"), which were filed on behalf of thirty-one (31) individuals out of a Settlement Class estimated to include over seventeen million persons.[1]

---

[1] For the purposes of this motion, Objector Appellants include:  Jerry Albert, Lydia Albert, Michael Davenport, Barbara Davenport, Geoffrey Hammons, Melissa Hammons, Mark Getzinger, Lynisa Getzinger, Christopher Lierman, Robin Lierman, Todd Loeb, Fred McCoy, Sheila McCoy, Daniel Ruark, Rhonda Ruark, Renee Seal, Paul J. Vido, Marla Vido, James Wright, and Brenda Wright (the "Holmes Objectors"); Kelsey Foligno and  Nicholas Foligno; Patrick Baker ("Objector Baker"); Spencer Silverbach, Vicki Silverbach, and Shabeer Thomas (the "Silverbach Objectors"); and Winfield C. Scott, Barbara A. Scott, Myra E. Simmons-Homer, John M. Calder, and Peggy A. Calder (the "Scott Objectors") (collectively, "Objector Appellants").  Notably, the Holmes Objectors' Notice of Appeal was

1

Good cause exists for the Court to order Objector Appellants to post appeal bonds. The Court has carefully addressed all of Objector Appellants' concerns—most of them twice—and Objector Appellants' appeals are meritless and frivolous. Thus, respectfully, the Court should order that Objector Appellants post appeal bonds that equal the estimated total amount of attorneys' fees and costs that Co-Lead Settlement Class Counsel and the Settlement Class will incur in responding to Objector Appellants' appeals in the following amounts: Objectors Kelsey Foligno and Nicholas Foligno ($10,000); Objector Baker ($25,000); Scott Objectors ($25,000); Holmes Objectors ($50,000); and Silverbach Objectors ($50,000).[2]

## II.    Requiring Objector Appellants to Post Appeal Bonds is Justified and Appropriate

A district court "may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. The nature and amount of an appeal bond is a matter left to the sound discretion of the district court. *Farris v. Standard Fire Ins. Co.*, 280 Fed. App'x 486, 489 (6th Cir. 2008) (citing *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 818 (6th Cir. 2004)).

A district court may impose an appeal bond in an amount to cover attorneys' fees and costs likely to be incurred on appeal where a statute with a fee-shifting provision is at issue in the underlying action (*In re Cardizem*, 391 F.3d at 818), or if it determines that an appeal might be

---

not filed in this case; rather, it was filed in the Holmes' individual case docket, albeit with an improper case caption, and does not list which of the Holmes Objectors are actually appealing. *See* Notice of Appeal filed by Donald E. Haviland, Jr., attached hereto as Exhibit 1. The only plaintiffs in that case are Mr. and Mrs. Matthew Holmes, both of whom opted-out of the settlement. A review of the United States Court of Appeals for the Sixth Circuit docket lists the Holmes Objectors identified above. *See* Letter from United States Court of Appeals for the Sixth Circuit Case Manager, dated Sept. 27, 2010, attached hereto as Exhibit 2. Representative Plaintiffs, however, do not believe that this notice of appeal is valid. But, it is likely that Mr. Haviland will claim that he has an appeal and that his improper notice of appeal is effective.

[2] A Proposed Order is attached hereto as Exhibit 14.

frivolous and that attorneys' fees and costs may be awarded on appeal pursuant to Fed. R. App. P. 38 and 39. *Gemelas v. Dannon Co.,* No. 08-CV-236, 2010 WL 3703811, at *2 (N.D. Ohio Aug. 31, 2010); *Young v. New Process Steel, LP,* 419 F.3d 1201, 1202-03 (11th Cir. 2005) (holding that when an appeal is taken in bad faith, a district court may exercise its discretion to impose a bond for attorney fees likely to be incurred on appeal); *Sckolnick v. Harlow,* 820 F.2d 13, 15 (1st Cir. 1987) (same).

Courts commonly impose appeal bonds in the class action context, where "a cottage industry has developed of professional objectors, where . . . the emphasis or at least the primary motivation is attorneys' fees." *See Countrywide*, Memo Op. and Order, at 3 (W.D.K.Y. Aug. 24, 2010) [D.E. #302]; *In re Cardizem CD Antitrust Litig.*, 391 F.3d at 816-17 (endorsing the trial court's imposition of a $50,000 appeal bond); *Barnes v. FleetBoston Fin. Corp.*, No. 1:01-cv-1039, slip op. at 2 (D. Mass. Aug. 22, 2006) (ordering imposition of $645,111 appeal bond, and observing that "[r]epeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements."), attached hereto as Exhibit 3; *Conroy v. 3M Corp.*, 00-cv-2810, Order Granting Plaintiff's Motion For Appellate Bond (N.D. Cal. Aug. 10, 2006) (ordering class action objectors to post an appeal bond of $431,167, of which $185,000 was for attorneys' fees), attached hereto as Exhibit 4; *In re Relafen Antitrust Litig.*, Order on Motion for Bond, No. 01-cv-12239 (D. Mass., Dec. 20 2005) (requiring objectors to post an appeal bond of $110,700); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1361, 2003 WL 22417252, *3 (D. Me. Oct. 7, 2003) (granting a motion requiring an objector/appellant to post an appeal bond of $35,000).

When determining if an appeal bond is appropriate, courts consider: (1) the appellant's financial ability to post a bond; (2) the merits of the appeal; (3) whether the appellant has shown

any bad faith or vexatious conduct; (4) the risk that the appellant would not pay appellee's costs if the appeal loses (*Schied v. Davis*, No. 08-CV-10005, 2008 WL 3852264, at *1 (E.D. Mich. Aug. 18, 2008) (citations omitted)); and (5) the appellant's attorney's prior actions. *See In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92 (SAS), 2010 WL 2505677, at *2 (S.D.N.Y. June 17, 2010).

In this matter, a statute with a fee shifting provision is at issue, and the meritless nature of the Objector Appeals, in addition to the harassing and vexatious conduct of several of their attorneys (many of whom could reasonably be characterized as professional objectors), warrants the imposition of the requested appeal bonds.

## A. Objector Appellants are Presumed to have the Financial Ability to Post a Bond

Courts presume that appellants are financially able to post appeal bonds unless they demonstrate otherwise. *See In re Initial Pub. Offering Sec. Litig.*, 2010 WL 2505677, at *1 (citations omitted).[3] In this case, each Objector Appellant is represented by an attorney or is an attorney, and the appeal bond requirement should be an expected expense.[4] Accordingly, this factor favors the imposition of appeal bonds.

## B. The Appeals Lack Merit

The Objector Appeals are entirely without merit. As the Court is aware, the settlement and award of attorneys' fees, costs and expenses, and incentive awards were approved only after

---

[3] *See also Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998) ("[W]e find that without any showing of her financial hardship, the bond imposed on Adsani is not an impermissible barrier to appeal . . . . "); *In re AOL Time Warner*, No. 02 CV 5575 (SWK), 2007 WL 2741033, at *2 (S.D.N.Y. Sept. 20, 2007) (concluding that the appellant was not arguing that it lacked the financial ability to post a bond where it did not submit financial information).

[4] Kelsey Foligno, in her and Nicholas Foligno's objection, stated: "the undersigned, Kelsey Foligno, is an attorney. I have the authority from my husband Nicholas to file this on my own and his behalf." Kelsey Foligno and Nicholas Foligno Objection, at 2. But, *pro se* status is also claimed by her and apparently on behalf of her husband. *See* Amended Notice of Appeal (Sept. 22, 2010) [D.E. #316].

lengthy and careful review, including thorough consideration and reconsideration of each of the concerns repeatedly raised by Objector Appellants.[5] To prevail on appeal, Objector Appellants would have to show that the Court's decisions constituted an abuse of discretion. *See, e.g., Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 625 (6th Cir. 2007) (applying an "abuse-of-discretion" standard to the following arguments of certain class action objectors: whether class representation was fair and adequate; whether notice to the class was reasonable; whether the settlement agreement was fair, reasonable, and adequate; and whether the objectors should have been given further discovery) (citations omitted). The Objector Appeals are frivolous and serve only to delay the distribution of much needed benefits to the Settlement Class. *See Moross Ltd. P'ship v. Fleckenstein Cap., Inc.,* 466 F.3d 508, 520 (6th Cir. 2006) ("An appeal is frivolous where an appellant 'essentially had no reasonable expectation of altering the district court's judgment based on law or fact.'") (citation omitted).

Objector Appellants' generic and baseless objections include allegations of: (1) collusion; (2) insufficiency of confirmatory discovery; (3) problems with the notice plan; (4) inadequate compensation for Settlement Class Members; (5) conflict of interests between the Representative Plaintiffs and the Settlement Class, as well as between Co-Lead Settlement Class Counsel and the Settlement Class; and (6) excessive attorneys' fees. In short, they include just about everything the cottage objector industry conjures up with repetition and disregard of facts and law.

Objector Appellants' accusations of collusion between Co-Lead Settlement Class Counsel and Defendants or Defendants' counsel are without merit, lacking in civility, and for

---

[5] The Holmes and Silverbach Objectors made repeat filings of their rejected objections despite the Court's learned analysis and prior rejection of such objections at the preliminary approval stage.

5

those who made them, clear evidence of their disregard for the truth of the matter, the law, and

the facts of this case. As the Court previously recognized, Objector Appellants have failed to

present any evidence supporting their falsehood that any impropriety took place, despite repeated

attempts to do so.[6]  *See Countrywide*, Memo. Op. and Order, at 18 (W.D.K.Y. Dec. 22, 2009)

("There is <u>no evidence</u> of fraud.") (emphasis added) [D.E. #111]; *Countrywide*, Memo. Op., at 5

("Accordingly, the Court finds no evidence of collusion or fraud….") [D.E. #297].

An appeal based on the argument that the settlement was somehow less than fair,

reasonable, and adequate would be wholly unsupported by the record.[7]  As the Court noted in its

Opinion and Order granting final approval to the settlement:

> The Court believes this established line of precedent suggests that proceeding
> through the litigation process in this case is unlikely to produce the plaintiffs'
> desired results. In contrast, the settlement offers a reasonable resolution that
> properly addresses the tricky issues presented by data breaches.
>
> . . .
>
> This settlement provides safeguards that would not otherwise be available to
> millions of people, at a time when such measures are needed most.

*Countrywide*, Memo. Op. and Order, at 10, 13 (W.D.K.Y. Dec. 22, 2009) [D.E. #297]. Indeed,

given the contentious nature of preliminary and final approval, and the learned scrutiny and

---

[6] This objection was arguably raised by the Holmes Objection, *Countrywide*, at 20-22 (W.D.K.Y. June 24, 2010) (the "Holmes Objection") [D.E.# 174]; the Kelsey Foligno and Nicholas Foligno Objection, *Countrywide*, at 2 (W.D.K.Y. June 28, 2010) [D.E. #201] (the "Kelsey Foligno and Nicholas Foligno Objection"); and the Silverbach Objection, *Countrywide*, The Silverbach Plaintiffs' Memorandum Of Law In Objection To Proposed Class Action Settlement, at 16-27 (W.D.K.Y. June 25, 2010) [D.E. #184] (the "Silverbach Objection").

[7] This objection was raised by the Kelsey Foligno and Nicholas Foligno Objection, the Baker Objection, *Countrywide*, Objection To Proposed Settlement, at 3-4 (W.D.K.Y. June 28, 2010) [D.E. #206] (the "Baker Objection"), the Silverbach Objection, and the Scott Objection, *Countrywide*, Objections Of Objectors Winfield C. Scott, Barbara A. Scott, Myra E. Simmons-Homer, John M. Calder And Peggy A. Calder To Proposed Settlement And Notice Of Intent To Appear, at 5-6 [D.E. #212] (the "Scott Objection").

6

opinions of the Court granting preliminary and final approval, Objector Appellants cannot demonstrate the necessary abuse of discretion to justify reversal on appeal.[8]

Confirmatory discovery conducted by Co-Lead Settlement Counsel and the Plaintiffs' Executive Committee was more than sufficient.[9]  *See Countrywide*, at 8 [D.E. #297]. As the Court is aware, Co-Lead Settlement Class Counsel and Plaintiffs' Executive Committee engaged in substantial confirmatory discovery, which involved reviewing thousands of pages of documents produced by Countrywide and deposing two senior Bank of America executives. Silverbach Objectors' counsel and the Holmes Objectors' counsel had the opportunity to engage in the confirmatory discovery process. Accordingly, Objector Appellants will be unable to demonstrate that the Court abused its discretion by finding that the significant confirmatory discovery Co-Lead Settlement Class Counsel engaged in was inadequate.

Objector Appellants also will be unable to demonstrate that notice to the Settlement Class was anything less than the best notice practicable under the circumstances. The Court followed the clear dictate of Fed. R. Civ. P. 23(c)(2)(B) and the Sixth Circuit in approving the notice plan, which involved providing individual notice to over ten million Settlement Class Members, in addition to notice by publication. *See, e.g. Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008). [10] As stated at the final fairness hearing, over seven million dollars had already been spent on

---

[8] Subsequent to the Court's ruling, the Supreme Court of Maine issued its ruling in *In re Hannaford Bros. Co. Customer Data Security Breach Litigation*, No. Fed-09-586, -- A.2d --, 2010 WL 3633731 (Me. Sept. 21, 2010), a consumer class action brought by plaintiffs alleging claims relating to the theft of certain of their personal information while in the possession of the defendant, holding that the plaintiffs who did not suffer economic loss or physical injury failed to allege the requisite injury, and dismissing the plaintiffs' claims. 2010 WL 3633731, at *3-5. The ruling was issued before Objector Appellants filed their notices of appeal. That opinion further supports the Court's words here and the propriety of the settlement.

[9] This objection was raised by the Silverbach Objection, at 28-29.

[10] This objection was raised by the Baker Objection, at 1-3; Kelsey Foligno and Nicholas Foligno Objection, at 2; and the Scott Objection, at 2-3.

notice and claims administration, and it is unchallenged that Hilsoft Notifications, the Court-approved Notice Administrator, is one of the premier class action notification organizations in the country.

Objector Appellants' attacks on the Representative Plaintiffs' and Named Plaintiffs' Incentive Awards are baseless, as such awards are common, and the modest awards approved here were both appropriate and commonplace.[11]  *See In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373 (S.D. Ohio 1990) ("Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent.").

Objector Appellants' arguments regarding purported intra-class conflicts are similarly without merit, as the Court has correctly noted that the challenged actions "ha[ve] already or possibly will produce a similar result for all members," and the Objector Appellants have nothing valid to stand on to demonstrate that this determination amounts to an abuse of discretion.[12]  *Countrywide*, at 6-9 [D.E. #111].

Finally, as to the attorneys' fees, costs and expenses awarded to Co-Lead Settlement Class Counsel, the Court is granted significant discretion to determine the "appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them."[13] *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir. 1996). The record was complete and the Court's review comprehensive. Objector Appellants have no reasonable basis to overturn that award.

---

[11] This objection was raised by the Kelsey Foligno and Nicholas Foligno Objection, at 2.

[12] This objection was raised by the Kelsey Foligno and Nicholas Foligno Objection, at 2.

[13] This objection was raised by the Kelsey Foligno and Nicholas Foligno Objection, at 2; the Baker Objection, at 4-5; and the Scott Objection, at 3-5.

### C.   Objector Appellants' Bad Faith and Vexatious Conduct Warrant the Imposition of the Requested Appeal Bonds

Objector Appellants' and their counsels' bad faith and vexatious conduct warrant the imposition of appeal bonds in this matter.

### 1.   The Holmes Objectors

In its Order of August 24, 2010, the Court recognized that "a cottage industry has developed of professional objectors, where again the emphasis or at least the primary motivation is attorneys' fees." Memo. Op. and Order, at 3 [D.E. #302]; *see also In re Cardinal Health, Inc. Sec. Litig.*, 550 F. Supp. 2d 751, 754 (S.D. Ohio 2008) (noting that:

> class actions . . . attract those in the legal profession who subsist primarily off of the skill and labor of, to say nothing of the risk borne by, more capable attorneys. These are the opportunistic objectors. Although they contribute nothing to the class, they object to the settlement, thereby obstructing payment to lead counsel or the class in the hope that lead plaintiff will pay them to go away. Unfortunately, the class-action kingdom has seen a Malthusian explosion of these opportunistic objectors . . . . )

The conduct of the Holmes Objectors' counsel, Mr. Donald Haviland, in this matter, and Mr. Haviland's documented attempts to affect other class actions, make it clear that he is a member of the professional objector group. Mr. Haviland's willingness to launch baseless accusations against Co-Lead Settlement Class Counsel; to raise and re-raise (as if they had never been considered and rejected by the Court, answered by the factual record of the case, or responded to by the Settling Parties) a multitude of objections against the settlement, no matter how frivolous; his failure to abide by Court rules and deadlines in this matter; and a significant and documented history of engaging in similar conduct in class action litigation, demonstrate that the Holmes Objectors' appeal was brought in bad faith. This determination is further supported by the fact that, despite previously admitting that the settlement was in the best interests of all but a few of his clients (whom he stated would have to opt out), Mr. Haviland has continued to pursue

objections in what can be argued to be an attempt to obtain a fee for himself and, perhaps his objector colleagues in this matter. *See* Affidavit of Burton H. Finkelstein, attached hereto as Exhibit 5.

Mr. Haviland has falsely accused Co-Lead Settlement Class Counsel of engaging in a "reverse auction,"[14] has ignored the Court's Orders,[15] and has delayed the conclusion of this litigation through frivolous and harassing objections—a delay he now threatens to extend with an improperly-filed appeal. At the final fairness hearing, despite the Court's previous rejection of his "collusion" argument and the nature and consequences of alleged "later breaches" having been clearly explained in the responsive papers, Mr. Haviland insisted on re-raising these arguments. Final Fairness Hearing Tr. at 53-54, 57-60 (July 19, 2010) ("FFH Tr."), the relevant excerpts of which are attached hereto as Exhibit 6.

Further, like the Martin Objectors, although in a different format, Mr. Haviland made a request for attorney fees that is both alarming and tell-tale. *See* Letter from Robert G. Hughes to Ben Barnow (Aug. 9, 2010), attached hereto as Exhibit 7. Co-Lead Settlement Class Counsel addressed Mr. Hughes' peculiar assertions squarely in a responsive letter. *See* Letter from Ben

---

[14] *See Countrywide*, Plaintiffs, Matthew and Danielle Holmes' Motion for Appointment of the Haviland Law Firm as Interim Class Counsel in a Proposed Three Way Co-Leadership Structure Alongside Representatives of the Barnow and Martin Groups and for The Appointment of Denton & Keuler as Liaison Counsel, at 9 (W.D.K.Y. Feb. 10, 2009) [D.E. #20].

[15] *Compare* Memo Op. and Or., at 29-30 (Dec. 22, 2009) (holding that "[e]ach Settlement Class Member desiring to object to the settlement shall submit a timely written notice of his or her objection" stating: "(i) the objector's full name, address, telephone number, and e-mail address; (ii) information identifying the objector as a Settlement Class Member, including (a) proof that they are a member of the Settlement Class . . . (viii) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation)") [D.E. #111]; *with* Holmes Objection (failing to provide the objectors' full names, addresses, telephone numbers, and e-mail addresses; information identifying the objectors as Settlement Class Members; or the objectors' signatures or the signature of the objectors' duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation)).

Barnow to Robert G. Hughes (Aug. 11, 2010), attached hereto as Exhibit 8. It is suggested that Mr. Haviland's approach is apparent, and that it cannot be fairly said to be in furtherance of the interests of the Settlement Class or the interests of justice. Indeed, with his own uncontroverted statement that the settlement was in the best interests of all but a few of his clients, whom he stated would have to opt out, he has now filed an alleged appeal on behalf of those very clients. *See* Affidavit of Burton H. Finkelstein. If clients join in an appeal, which by their lawyer's statement would be against their own interests, and which under extant law will only result in a burden on the system and a delay in the delivery of the benefits of an excellent settlement, then they are acting in willful bad faith, perhaps out of self-interest for their lawyer, but surely not for the interests of the Settlement Class, whose rights they seek to defeat, and certainly not along a path the judicial system should tolerate.

In addition to its frivolity, the Holmes appeal is defective, as no notice of appeal has been properly filed on behalf of any of Mr. Haviland's alleged objectors. Rather than file an appeal in this consolidated MDL matter, Mr. Haviland filed a notice of appeal in *Holmes v. Countrywide Fin. Corp. et al.*, 08-CV-205 (W.D. KY.), a matter in which he, an out-of-state attorney, does not appear to have been admitted to practice *pro hac vice*, on behalf of "Plaintiffs in the above-captioned class action." The caption of the purported notice includes the case number of the *Holmes* case, but improperly includes the title of this MDL matter. The purported notice of appeal expressly excludes Mr. and Mrs. Matthew Holmes and Mr. and Mrs. John Stiers from the appeal, as they opted-out of the settlement. However, the only plaintiffs in *Holmes v. Countrywide Fin. Corp. et al.* are Mr. and Mrs. Matthew Holmes, and no complaint including

any other plaintiff was filed in that matter.[16] Accordingly, the notice of appeal was not filed on behalf of any plaintiff or objector, rendering it invalid.

Mr. Haviland has a significant and documented history of advancing objections. Indeed, in the *Bridgeport Fire Litigation*, a Pennsylvania Court held that: "Mr. Haviland appears to have been trying to seek this information in support of a 'wild goose chase' to prove a self-created theory that the Settlement Agreement was the product of collusion, a theory that has absolutely no basis in fact. Mr. Haviland had no basis to support such an outrageous and manufactured allegation." *See* Order, *In Re Bridgeport Fire Litig.*, Master File No. 05-20924 (Court of Common Pleas, Montgomery County, Pa., Feb. 27, 2009), attached hereto as Exhibit 9. That Court went on to note that "the subpoenas Mr. Haviland sought to issue represented yet another example of his improper interference in the class action proceedings. He had no right or basis to demand documents from various parties and non-parties. Mr. Haviland has continuously[] operated to delay and disrupt these proceedings . . . ." *Id.*

In the *AWP* case, Mr. Haviland was chastised by the Court for his actions and ethics. Among other transgressions, the Court found: (1) that Mr. Haviland's failure to disclose that he was concurrently seeking a national Class in a separate court, despite his express representations to the contrary "to the Court or fellow counsel [was] a breach of trust as class counsel"; (2) that Mr. Haviland made a "material misrepresentation" to a New Jersey court; (3) that Mr. Haviland's filing of declarations from his clients, in which they threatened to withdraw if Mr. Haviland were not appointed as class counsel, were akin to "threats to take his toys and go home if the Court declined his request. Mr. Haviland intended to coerce the Court into appointing him as Co-Lead Class Counsel or risk losing class representatives in a class action involving the sick and elderly.

---

[16] An Amended Complaint was filed in the MDL action on behalf of various other plaintiffs. *Countrywide,* Amended Complaint [D.E. #23].

Both the nature and the timing of these declarations raised concerns about Haviland's loyalty to the class."; and, (4) that "Mr. Haviland breached a duty of care by publicly placing on the docket sensitive negotiating positions of plaintiffs." *In re: Pharma. Indus. Average Wholesale Price Litig.*, MDL 1456, 2008 WL 53278, at **3-5 (D. Mass. Jan. 3, 2008). So egregious was his conduct that Judge Saris stated at one point, "truthfully, at this point, I don't trust you." *Id.* Judge Saris took the unusual step of asking Mr. Haviland's former Co-Class counsel to submit briefs and declarations as to why Mr. Haviland should be removed as Class counsel. *Id.* After reviewing those submissions, Judge Saris entered an Order removing him as a Class counsel. *Id.*

Additionally, in *In re: Lupron Marketing and Sales Practices Litigation*, 228 F.R.D. 75 (D. Mass. 2005), Mr. Haviland was found to have sent letters containing vital misrepresentations, thereby misleading the class about a proposed settlement. Order, *In re: Lupron* (D. Mass. Jan. 26, 2005), attached hereto as Exhibit 10. Mr. Haviland also objected in the *Lupron* case, where, as in this matter, the Court rejected his arguments. 228 F.R.D. 75, 83 (D. Mass. 2005)

Mr. Haviland's conduct and his clients' willingness to proceed with him along this course support requiring the Holmes Objectors to post an appeal bond as requested.

### 2.  Objectors Kelsey Foligno and Nicholas Foligno

The original objection of Kelsey Foligno and Nicholas Foligno was incomplete, and they never bothered to complete it. Their original three-page objection, filed June 28, 2010, was missing at least one page, as the second page starts mid-paragraph and the first full paragraph starts with a paragraph numbered 5, despite there being no paragraphs numbed 1 through 4. Kelsey Foligno and Nicholas Foligno Objection, at 2. Additionally, no Exhibit A was attached to the objection despite reference to it in the first page of the objection and Kelsey Foligno's sworn verification.  *Id.* at 1, 3. These errors were brought to Kelsey Foligno's attention by the Claims

13

Administrator, but neither Kelsey Foligno nor Nicholas Foligno corrected the errors or appeared at the final fairness hearing.[17] *See* Declaration of Robert Oseas, attached hereto as Exhibit 11. This dilatory conduct demonstrates the necessary bad faith to warrant imposition of an appeal bond against Kelsey Foligno and Nicholas Foligno.

### 3. Objector Baker

Objector Appellant Patrick Baker's attorney, Thomas L. Cox. Jr., has the markings of a professional objector. Mr. Cox has recently objected to several class action settlements, including *Dewey v. Volkswagen of Am.*, 07-2249, 2010 WL 3018305, n.17 (D.N.J. July 30, 2010) ("Objectors David Stevens and Orion Antique Importer, Inc. (represented by Thomas L. Cox, Jr.)"); *In re Lawnmower Engine Horsepower Marketing & Sales Practices Litigation*, 08-1999, Thomas L. Cox Jr.'s Amended Objection (E.D. Wis. June 4, 2010) (objecting on his own behalf); *In re Lifelock, Inc. Marketing and Sales Practice Litigation*, MDL Docket Civ. No. 2:08-md-01977 (D. Ariz.) (objecting on behalf of Kris Klinge and Tracey Cox Klinge); and *In re Tyson Foods, Inc., Chicken Raised Without Antibiotics Consumer Litigation*, No. 1:08-md-01982-RDB (D. Md. Apr. 19, 2010) (objecting on his own behalf). In each instance, Mr. Cox's objections were denied. *Dewey*, 2010 WL 3018305 (granting final approval of class action settlement); *In re Lawnmower*, MDL. No. 08-1999, 2010 WL 3310264 (E.D. Wis. Aug. 16, 2010) (same); *In re Lifelock*, MDL Docket No. 08-1977-MHM, 2010 WL 3715138 (D. Ariz. Aug. 31, 2010) (same); *In re Tyson Foods*, No. RDB-08-1982, 2010 WL 1924012 (D. Md. May 11, 2010) (same). On its own, this pattern of objecting is sufficient grounds to require an appeal

---

[17] Neither Objector Baker, Objectors Kelsey Foligno and Nicholas Foligno, the Scott Objectors, nor their counsel, bothered to appear at the final fairness hearing. The Scott Objectors' attorney, Mr. Palmer, and the Baker Objector stated in their original objections that they would appear at the final fairness hearing. Scott Objection, at 1; Baker Objection, at 5. None of them appeared or had the courtesy to correct the record before failing to appear.

bond. *See In re Initial Pub. Offering Sec. Litig.*, 2010 WL 2505677, at *2. Indeed, his motivations are emphasized by his cavalier approach to this litigation: despite Mr. Baker's representations that Mr. Cox would appear at the final fairness hearing, and that he would be presenting an expert on class actions, and despite Mr. Cox's motion to appear *pro hac vice*, neither Mr. Baker nor Mr. Cox appeared and no expert was presented. Such misgivings cast serious if not conclusive doubt on the virtue of Objector Baker's notice of appeal and Mr. Cox's intent.

### 4.   The Scott Objectors

The Court should impose an appeal bond on the Scott Objectors to protect the Settlement Class from their frivolity and their attorney, Mr. Darrell Palmer, who is fairly characterized as a "professional objector." *See In re Initial Pub. Offering Sec. Litig.*, 2010 WL 2505677, at *2 (considering the status of an objector's attorney as a professional objector in granting a request for an appellate bond). Mr. Palmer has a history of objecting to class action settlements and filing notices of appeal which delay the distribution of benefits. *See Rodriguez v. West Publishing Corp.*, No. 05-3222, Objections and Notice of Intent to Appear (C.D. Cal. May 22, 2007); *In re Vitamins Antitrust Litig.*, MDL No. 1285, Supplemental Objections (D.D.C. June 18, 2010); *Savaglio v. Wal-Mart Stores, Inc.*, 835687-7, RG04178461, Objection of Joseph Daniel Wilkins to Proposed Settlement and Notice of Intent to Appear (Cal. Supr. Ct. Alameda County Mar. 25, 2010) (collectively attached hereto as Exhibit 12).   Notably, in the *Vitamins Antitrust* case, after the district court denied Mr. Palmer's objections, Mr. Palmer filed a notice of appeal which his client later voluntarily dismissed. *In re Vitamins Antitrust Litig.*, No. 10-7096, 2010 WL 3515696, at *1 (D.C. Cir. Sept. 2, 2010). Perhaps indicative of the intentions of Mr. Palmer and his objectors in this case, neither Mr. Palmer nor his objectors opted to appear at the final

fairness hearing, but their objection did include a request for incentive fees for the objectors. *See Countrywide*, at 1, 6 (requesting an incentive fee for the objectors) [D.E. #212].

### 5. The Silverbach Objectors

Although a review of the Silverbach Objection is itself condemning, the Silverbach Objectors' and their counsels' conduct in this matter supports the conclusion that their appeal was brought in bad faith. Throughout this matter, the Silverbach Objectors have made statements to the Court in their filings that were refuted as being inaccurate and incomplete, and when such deficiencies were brought to their attention, made no attempts to correct the record. The Silverbach Objectors represented that Judge Mohr had given a "clear indication that class certification was going to be granted" at an initial status conference, when, in reality, Judge Mohr had raised concerns regarding superiority at that time, stating that the fact that the government and the bank had already taken steps to make everyone whole, "could defeat [class certification] on superiority grounds." Omnibus Response of Countrywide Defendants, at 43-46 [D.E. #73] (*Comparing* Silverbach Objection to Preliminary Approval of Class Action Settlement, at 18 [D.E. #61-2], *with* Status Conference Transcript, *Weber v. Countrywide Fin. Corp.*, at 20:18-26 (Mohr, J. Dec. 15, 2008) (Superior Ct. Cal.) [D.E. #75-26]). Additionally, the Silverbach Objectors' offered expert's statement that the offer of credit monitoring in this case was somehow inadequate is in direct odds with his prior testimony before the United States House Financial Services Committee, Oversight and Investigations Subcommittee, where he recommended requiring companies to offer victims of security breaches free credit monitoring services to restore consumer confidence (*See* Hendricks' Testimony [D.E. #73-20]), and in *Melancon v. Louisiana Office of Student Fin. Assistance*, 567 F. Supp. 2d 873 (E.D. La. 2008) (*See* Affidavit of Evan Hendricks [D.E. #73-31]) and *Perry v. FleetBoston Fin. Corp.*, 229

F.R.D. 105, 116-117 (E.D. Pa. 2005), where he endorsed providing credit monitoring to victims of data breaches.

After arguing that discovery in this matter was inadequate, and despite the Court's allowing them to do so, the Silverbach Objectors' counsel failed to participate in any of the discovery depositions. Also, when objecting to final approval of the settlement, the Silverbach Objectors simply did a cut and paste of much of their same arguments that the Court had previously rejected. In fact, the Silverbach objection was made under the signature of a law firm that no longer exists—KamberEdelson, LLC changed its name to Edelson McGuire, LLC in late 2009. *See* Letter from Jay Edelson to Ben Barnow (June 29, 2010), attached hereto as Exhibit 13. The Silverbach Objectors' Appeal cannot fairly be defined as in furtherance of the interests of the Settlement Class. It can, however, fairly be described as an appeal that is in the interests of the Silverbach Objectors' attorneys.

### D.   A Significant Risk of Nonpayment Exists

Co-Lead Settlement Class Counsel and the Class face a significant risk of never receiving any post-appeal costs or fees to which they may be entitled absent a bond. Objector Appellants are scattered around the country and, in the more than likely event that Objector Appellants are unsuccessful on their meritless appeals, Co-Lead Settlement Class Counsel and the Class "would need to institute collection actions in numerous jurisdictions to recover their costs . . . [resulting in] a significant risk of non-payment." *In re Initial Pub. Offering Sec. Litig.*, 2010 WL 2505677, at *2; *see also In re Currency Conversion Fee Antitrust Litig.*, 01 MDL 1409, 2010 WL 1253741, *2 (S.D.N.Y. Mar. 5, 2010) (same). Moreover, none of Objector Appellants has offered to guarantee payment of costs that might be assessed against them. *See id.* In light of these risks, Objector Appellants should be required to post appeal bonds.

### III.   The Appeal Bonds Should Total the Attorneys' Fees and Costs of Responding to the Objector Appeals, and the Amounts Requested are Reasonable

Representative Plaintiffs are entitled to a bond sufficient to cover (1) the attorneys' fees they expect to incur on appeal, and (2) any taxable cost they are entitled to recover.  *See Farris v. Standard Fire Ins. Co.*, 280 Fed. App'x 486, 489 (6th Cir. 2008); *In re Cardizem CD Antitrust Litig.*, 391 F.3d at 816-18. While the precise amount of the bond is left to the sound discretion of the court, the practical reality is that "[r]equiring too small a bond, or no bond at all, may encourage frivolous, time-consuming, harassing appeals." *Page v. A.H. Robins Co.*, 85 F.R.D. 139, 139-40 (E.D. Va. 1980). It is suggested that the words "frivolous, time-consuming, harassing appeals," aptly describe the attempts of Objector Appellants' counsel and their proposed appellants here.

Attorneys' fees expected to be incurred in responding to an appeal are properly included in an appeal bond if the statute underlying the case subject to the appeal contains a fee shifting statue, or if the Court finds that an appeal might be frivolous. *See Farris*, 280 Fed. App'x at 489; *In re Cardizem CD Antitrust Litig.*, 391 F.3d at 817-18 (affirming appeal bond against objector where fee shifting provision was at issue); *Gemelas v. Dannon Co., Inc*., 2010 WL 3703811, at *2 (N.D. Ohio Aug. 31, 2010); *Young v. New Process Steel, LP,* 419 F.3d 1201, 1202-03 (11th Cir. 2005) (holding that when an appeal is taken in bad faith, a district court may exercise its discretion to impose a bond for attorney's fees likely to be incurred on appeal); *Sckolnick v. Harlow,* 820 F.2d 13, 15 (1st Cir. 1987) (same). The Objector Appeals are frivolous, time-consuming, and harassing, and the claims at issue in this proceeding involve violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681n, which allows for attorney's fees when a pleading, motion, or other paper is filed in bad faith or for harassment.  *See* 15 U.S.C. § 1681o(b) &

1681n(c). It is accordingly appropriate for the Court to include expected appellate attorneys' fees in the requested appeal bonds.

Additionally, the appeal bonds would include the anticipated costs incurred in responding to the Objector Appeals that are in excess of the $5,000 in anticipated costs already awarded by the Court to respond to appeals. *See Countrywide*, at 20 [D.E. #297]; Fed. R. App. P. 7; *Chiaverini, Inc. v. Frenchie's Fine Jewelry, Coins & Stamps, Inc.*, No. 04-CV-74891-DT, 2008 WL 2415340, *1 (E.D. Mich. June 12, 2008) (citations omitted) ("[t]he costs of appeal for which the bond ensures payment are those authorized by 28 U.S.C. § 1920 and Appellate Rule 39").

The requested appeal bond amounts include attorneys' fees and are reasonable when viewed against the facts of the Objector Appellants and their counsel. The requested amounts differ according to the number of issues raised by an objector or group of objectors, because more resources will be required to respond to appeals where more issues must be addressed, and also take into account the bad faith actions of certain Objector's counsel and whether the Court has previously twice rejected such arguments. Importantly, Representative Plaintiffs will only be able to recover their actual attorneys' fees and costs against the bond, and will forego recovery of any cost under $5,000. Thus, they will not receive a windfall, only assurance that they will recover appropriate appellate attorneys' fees, plus costs beyond $5,000.

In *Cardizem*, the Sixth Circuit specifically endorsed a bond that included $50,000 in expected attorney's fees against a single objector—a clearly less burdensome appeal than one involving multiple appellants. 391 F.3d at 815. Indeed, some courts have ordered far higher appeal bonds than the one requested here. *See, e.g. Conroy v. 3M Corp.*, 00-cv-2810, Order Granting Plaintiff's Motion For Appellate Bond (N.D. Cal. Aug. 10, 2006) (ordering class action objectors to post an appellate bond of $431,167, of which $185,000 was for attorneys' fees);

19

*Barnes v. FleetBoston Fin. Corp.*, No. 1:01-cv-1039, slip op. at 2 (D. Mass. Aug. 22, 2006) (ordering imposition of $645,111 appeal bond); *see also In re Currency Conversion Fee Antitrust Litig.*, 2010 WL 1253741, at *3 (finding $16,000 too low for an appellate bond and ordering the posting of a $50,000 bond); *Capizzi v. States Res. Corp.*, CIV.A.02-12319-DPW, 2005 WL 958400, at *1 (D. Mass. Apr. 26, 2005) (endorsing an appellate bond of $25,000 in attorney's fees for a brief that would merely require the "use of cut-and-past[e] functions for word processing."). Accordingly, the Court should order the imposition of the appeal bonds requested herein.

## IV.      Conclusion

For the reasons set forth herein, Objector Appellants' posting of appeal bonds is justified and appropriate. Therefore, Representative Plaintiffs, individually and on behalf of the Settlement Class, by and through Co-Lead Settlement Class Counsel, respectfully pray that this Honorable Court enter an order:

(a) Requiring Objector Appellants to post appeal bonds in the following amounts: Objectors Kelsey Foligno and Nicholas Foligno ($10,000); Objector Baker ($25,000); Scott Objectors ($25,000); Holmes Objectors ($50,000); and Silverbach Objectors ($50,000); and

(b) Granting such other and additional relief as the Court may deem just and appropriate.

Dated:  October 6, 2010                                      Respectfully submitted,

                                                             *Co-Lead Settlement Class Counsel*

                                                               /s/  Ben Barnow
                                                             Ben Barnow
                                                             Barnow and Associates, P.C.
                                                             One North LaSalle Street, Suite 4600
                                                             Chicago, IL  60602
                                                             (312) 621-2000

Burton H. Finkelstein
Finkelstein Thompson LLP
The Duvall Foundry
1050 30th Street, N.W.
Washington, D.C. 20007
(202) 337-8000

*Plaintiffs' Liaison Counsel*

Mark K. Gray
Franklin Gray & White
505 W. Ormsby Ave.
Louisville, KY 40203
(502) 637-6000

## Certificate of Service by Electronic Means

I, Ben Barnow, hereby certify that the foregoing document was caused to be served electronically this 6th day of October, 2010, pursuant to ECF as to Filing users, and I shall serve a copy of same via U.S. Mail to any party who is not a filing user or represented by a filing user.


/s/  Ben Barnow_____

22

<u>Exhibits</u>

Notice of Appeal filed by Donald E. Haviland, Jr ..........................................................Exhibit 1

Letter from United States Court of Appeals for
the Sixth Circuit Case Manager (Sept. 27, 2010) ..............................................................Exhibit 2

Order, *Barnes v. FleetBoston Fin. Corp.*, No. 1:01-cv-1039 (D. Mass. Aug. 22, 2006)....Exhibit 3

Order, *Conroy v. 3M Corp.*, 00-cv-2810 (N.D. Cal. Aug. 10, 2006) ...............................Exhibit 4

Affidavit of Burton H. Finkelstein ..................................................................................Exhibit 5

*Countrywide*, Final Fairness Hearing Transcript (July 19, 2010)....................................Exhibit 6

Letter from Robert G. Hughes to Ben Barnow (Aug. 9, 2010) ..........................................Exhibit 7

Letter from Ben Barnow to Robert G. Hughes (Aug. 11, 2010) .......................................Exhibit 8

Order, *In Re Bridgeport Fire Litig.*, Master File No. 05-20924
(Court of Common Pleas, Montgomery County, Pa., Feb. 27, 2009) ...............................Exhibit 9

Order, *In re: Lupron Marketing and Sales
Practices Litigation* (D. Mass. Jan. 26, 2005) .................................................................Exhibit 10

Declaration of Robert Oseas ..........................................................................................Exhibit 11

Palmer Objections...........................................................................................................Exhibit 12

Letter from Jay Edelson to Ben Barnow (June 29, 2010)................................................Exhibit 13

Proposed Order ...............................................................................................................Exhibit 14