**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

_____
                                                    )
IN RE: COUNTRYWIDE FINANCIAL CORP.    )        CASE NO: 3:08-MD-01998
CUSTOMER DATA SECURITY BREACH         )        MDL No. 1998
LITIGATION                                          )
_____  )

**REPLY IN SUPPORT OF REPRESENTATIVE**
**PLAINTIFFS' MOTION FOR IMPOSITION OF APPEAL BONDS**

TABLE OF CONTENTS

I.   Introduction ........................................................................................................... 1

II.  Legal Standard .......................................................................................................1

III. The Objector Appeals are Frivolous and were Brought in Bad Faith ......................................3

     A.   The Holmes Appeal ......................................................................................3

          1.   The Holmes Appeal has No Reasonable Expectation of Altering the
               Court's Judgment Based on Law or Fact and, thus, is Frivolous ....................3

          2.   The Holmes Appeal was Brought in Bad Faith ................................................3

     B.   The Silverbach Appeal ...............................................................................9

          1.   The Silverbach Appeal has no Reasonable Expectation of Altering the
               Court's Judgment Based on Law or Fact and, thus, is Frivolous ....................9

          2.   The Silverbach Appeal was Brought in Bad Faith .........................................10

     C.   The Foligno Appeal ...................................................................................11

          1.   The Foligno Appeal has no Reasonable Expectation of Altering the Court's
               Judgment Based on Law or Fact and, thus, is Frivolous ...............................11

          2.   Kelsey Foligno is an Attorney Who is Represented by an Attorney,
               Yet Presents her Appeal as *pro se* ..................................................12

     D.   The Baker Appeal .....................................................................................12

          1.   The Baker Appeal has no Reasonable Expectation of Altering the
               Court's Judgment Based on Law or Fact and, thus, is Frivolous .................12

          2.   The Baker Appeal was Brought in Bad Faith ................................................13

     E.   The Scott Appeal has no Reasonable Expectation of Altering the
          Court's Judgment Based on Law or Fact and, thus, is Frivolous, and
          was Brought in Bad Faith ..........................................................................14

IV.  Objector Appellants' Financial Ability to Post the Requested Appeal Bonds .......................14

V.   The Risk of Non-Payment is Significant .................................................................14

VI.  Applicable Law Supports that Anticipated Attorneys' Fees Should be Included in the Requested Appeal Bond Amounts ................................................................................................ 15

VII. Conclusion ............................................................................................................................... 16

TABLE OF AUTHORITIES

<u>Cases</u>

*Adsani v. Miller*,
  139 F.3d 67 (2d Cir. 1998)...................................................................................................14

*Farris v. Standard Fire Ins. Co.*,
  280 Fed. App'x 486 (6th Cir. 2008) ......................................................................................2

*Gemelas v. Dannon Co., Inc.*,
  No. 1:08 CV 236, 2010 WL 3703811 (N.D. Ohio Aug. 31, 2010) ........................................1

*In re Bridgeport Fire Litig.*,
  No. 05-20924 (Court of Common Pleas, Montgomery County, Pa., Feb. 27, 2009) .................8

*In re Cardizem CD Antitrust Litig.*,
  391 F.3d 812 (6th Cir. 2004) .....................................................................................1, 15, 16

*In re Currency Conversion Fee Antitrust Litig.*,
  01 MDL 1409, 2010 WL 1253741 (S.D.N.Y. Mar. 5, 2010) ...........................................14, 15

*In re Initial Pub. Offering Sec. Litig.*,
  21 MC 92 (SAS), 2010 WL 2505677 (S.D.N.Y. June 17, 2010) .........................................2, 14

*In re: Lupron Mktg. and Sales Practices Litig.*,
  228 F.R.D. 75 (D. Mass. 2005)...........................................................................................8, 9

*In re: Pharma. Indus. Average Wholesale Price Litig.*,
  MDL 1456, 2008 WL 53278 (D. Mass. Jan. 3, 2008) ..............................................................8

*Marek v. Chesny*,
  473 U.S 1 (1985)................................................................................................................15

*Moross Ltd. P'ship v. Fleckenstein Cap., Inc.*,
  466 F.3d 508 (6th Cir. 2006) .................................................................................................3

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797, 811-12 (1985)...................................................................................................4

*Schied v. Davis*,
  08-CV-10005, 2008 WL 3852264 (E.D. Mich. Aug. 18, 2008)..................................................2

*Sckolnick v. Harlow*,
  820 F.2d 13 (1st Cir. 1987).....................................................................................................2

*Tri-Star Pictures, Inc. v. Unger*,
32 F. Supp. 2d 144, 148 (S.D.N.Y. 1999), *aff'd,* 198 F.3d 235 (2d Cir. 1999) ...........................14

*Young v. New Process Steel, LP,*
   419 F.3d 1201 (11th Cir. 2005) ...................................................................................................1

<u>Federal Rules and Statutes</u>

Fed. R. App. P. 7..........................................................................................................................15

Fed. R. App. P. 38...........................................................................................................................1

Fed. R. App. P. 39 ..........................................................................................................................1

15 U.S.C. § 1681n, o.....................................................................................................................15

## I.   Introduction

Objector Appellants' conclusory assertions that their appeals are not frivolous find no support in fact or law, as no reasonable person could expect that the Court of Appeals will find that the Court abused its discretion in entering the Final Approval Order. In addition, the bad faith nature of the Objector Appeals is supported by the meritless nature of their appeals and the actions of Objector Appellants' counsel. None of Objector Appellants, who are located in states throughout the country, have asserted that they lack the financial ability to post the requested appeal bonds, and there is a significant risk that the Settlement Class will be unable to collect any amounts awarded to them when they prevail on appeal. Thus, respectfully, the Court should grant Representative Plaintiffs' Motion for Imposition of Appeal Bonds ("Motion for Bonds"), and order Objector Appellants to post appeal bonds in the following amounts: Objector Kelsey Foligno[1] ($10,000); Objector Baker ($25,000); Scott Objectors ($25,000); Holmes Objectors ($50,000); and Silverbach Objectors ($50,000).

## II.   Legal Standard

A district court may impose an appeal bond in an amount to cover attorneys' fees and costs likely to be incurred on appeal where a statute with a fee-shifting provision is at issue in the underlying action (*In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 818 (6th Cir. 2004)), or if it determines that an appeal might be frivolous and that attorneys' fees and costs may be awarded on appeal pursuant to Fed. R. App. P. 38 and 39. *Gemelas v. Dannon Co.,* No. 08-CV-236, 2010 WL 3703811, *2 (N.D. Ohio Aug. 31, 2010); *Young v. New Process Steel, LP,* 419 F.3d 1201, 1202-03 (11th Cir. 2005) (holding that when an appeal is taken in bad faith, a district court may

---

[1] Nicholas Foligno is no longer an Objector Appellant. On November 2, 2010, the Sixth Circuit dismissed an appeal filed *pro se* by Kelsey Foligno on behalf of herself and Nicholas Foligno. Kelsey Foligno, however, remains an Objector Appellant, as she filed a separate appeal *pro se* on behalf of herself, which remains pending. An issue does exist as to whether she in fact proceeds *pro se*.

exercise its discretion to impose a bond for attorney fees likely to be incurred on appeal); *Sckolnick v. Harlow,* 820 F.2d 13, 15 (1st Cir. 1987) (same).

When determining if an appeal bond is appropriate, courts consider: (1) the appellant's financial ability to post a bond; (2) the merits of the appeal; (3) whether the appellant has shown any bad faith or vexatious conduct; (4) the risk that the appellant would not pay appellee's costs if the appeal loses (*Schied v. Davis*, No. 08-CV-10005, 2008 WL 3852264, at *1 (E.D. Mich. Aug. 18, 2008) (citations omitted)); and (5) the appellant's attorney's prior actions. *See In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92 (SAS), 2010 WL 2505677, *2 (S.D.N.Y. June 17, 2010). The nature and amount of an appeal bond is a matter left to the sound discretion of the district court. *Farris v. Standard Fire Ins. Co.*, 280 Fed. App'x 486, 489 (6th Cir. 2008) (citing *Cardizem*, 391 F.3d at 818).

Movants suggest that the imposition of appeal bonds is appropriate in the class action context, where "a cottage industry has developed of professional objectors, where . . . the emphasis or at least the primary motivation is attorneys' fees." Memo Op. and Order, at 3 (Aug. 24, 2010) [D.E. #302]. In addition to the authority cited in Representative Plaintiffs' Motion for Bonds, the court's opinions in *In re Wal-Mart Wage and Hour Employment Practices Litigation*, MDL 1735, No. 2:06-CV-0025 (D. Nev.) ("*Wal-Mart Wage Litig.*"), support that imposing the requested appeal bonds is appropriate in this matter. Representative Plaintiffs' Motion for Bonds at 3. In that matter, the court ordered four objector appellants, including an objector appellant represented by attorney Christopher Bandas, who represents Objector Kelsey Foligno in this matter, to each post appeal bonds in the amount of $500,000. Order, *Wal-Mart Wage Litig.*, at 3-4 (Mar. 8, 2010), a copy of which attached hereto as Exhibit A. No appeal bonds were posted, and the court ordered, as a sanction for their failure to comply with the court's order, each

2

objector appellant and their counsel, jointly and severally, to pay $10,000 to the plaintiffs' settlement fund. Order, *Wal-Mart Wage Litig.*, at 2-3 (May 25, 2010), a copy of which is attached hereto as Exhibit B. The objector appellants subsequently entered into a Joint Stipulation and Order with co-lead counsel in that matter, through which the objector appellants agreed to dismiss their appeals in exchange for co-lead counsel's request that the court vacate its order requiring each objector appellant and their attorney to pay, jointly and severally, $10,000 as a sanction for violating the court's order and to forgo any further litigation related to the sanctions order. Stipulation, *Wal-Mart Wage Litig.*, at 3 (Aug. 25, 2010), a copy of which is attached hereto as Exhibit C.

### III.   The Objector Appeals are Frivolous and were Brought in Bad Faith

The Objector Appeals are frivolous, as they have no reasonable expectation of altering the Court's judgment based on law or fact. *See Moross Ltd. P'ship v. Fleckenstein Cap., Inc.,* 466 F.3d 508, 520 (6th Cir. 2006). The meritless nature of the Objector Appeals and their counsel's willingness to launch any objection, no matter how baseless, in furtherance of what can be seen as self-interest, also supports that the Objector Appeals were brought in bad faith.

#### A.   The Holmes Appeal

##### 1.   The Holmes Appeal has No Reasonable Expectation of Altering the Court's Judgment Based on Law or Fact and, thus, is Frivolous

None of the issues presented for appeal by the Holmes Objector Appellants have any basis in law or fact, or any reasonable chance of succeeding in the Court of Appeals, which will review the Court's Order granting final approval of the settlement under an abuse of discretion standard. Thus, the Holmes Appeal is frivolous, and will serve only to delay the timely distribution of benefits to the Settlement Class.

The Holmes Objector Appellants' claim that the Settlement Class "lacked adequate representation of all the diverse interests in the settlement class, including class members located in fifty (50) states and future claimants," has no basis in law or fact. The Settlement Class was adequately represented in this matter, and the Holmes Objector Appellants have come forth with no facts evidencing to the contrary. Additionally, there is no requirement that a nationwide class include representatives from all fifty states or "future claimants." Moreover, if the rights of "future claimants" were somehow different than those of Settlement Class Members with present claims (which they are not), the Holmes Objector Appellants would have no standing to raise such an objection, as they all claim to have suffered present injuries relating to the data breach at issue. Such a willingness to make any argument, no matter how baseless or irrelevant to the interests of a client, is the hallmark of an attorney objector attempting to obstruct a settlement for self-interest.

The Holmes Objector Appellants' claim that the Court deprived them of due process in ordering that letters submitted regarding the settlement be filed as restricted documents to prevent public disclosure of private and confidential information has no chance of succeeding in the Court of Appeals. Due process does not, as the Holmes Objector Appellants suggest, equate to a right to review the submissions of others. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).[2] Additionally, all parties to the MDL litigation, including the Holmes Objector Appellants, could access and view the complained-of restricted letters electronically through the PACER system by using an ECF filing password, and thus (again), the Holmes Objector Appellants have no standing to make such an argument. Order [D.E. #222]. The Court also made

---

[2] Due process equates to providing Settlement Class Members with: "notice that is the best practicable, reasonably calculated, under the circumstances to apprise [Settlement Class Members] of the pendency of the action and afford them an opportunity to present their objections"; the opportunity to opt-out of the settlement; and that Class Representatives adequately represent the class. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).

such letters accessible to parties and non-parties "at the public terminal station located in the clerk's office [in the Western District of Kentucky]." *Id.* It is sadly ironic in a case involving the illegal exposure of personal identifying information that objectors purporting to represent the Settlement Class are now taking an appeal on the grounds that similar personal identifying information was not made available globally on the Internet by the Court.

The Holmes Objector Appellants' argument that the Court failed to provide "adequate and meaningful notice and opt out [*sic*] rights to future claimants" is unfounded. The Court-approved Notice program was developed by Hilsoft Notifications, one of the premier class action notice specialists in the country, and involved: individual notice being mailed to over 10,950,000 Settlement Class Members; publishing notice in leading publications and newspapers throughout the United States and U.S. territories; the issuance of a Court-approved Informational Release to approximately 5,600 press outlets throughout the United States and 600 press outlets throughout the U.S. territories; and the posting of notice on a settlement website, www.CWdataclaims.com, in English and Spanish. Thus, the notice effort in this case was comprehensive and satisfied all legal requirements, and the Holmes Objector Appellants' argument that the Court somehow failed to provide adequate notice to "future claimants," which the Holmes Objectors, as present claimants, have no standing to argue on behalf of, has no merit or basis in law or fact, and it is unreasonable to expect that this argument will succeed on appeal.

The Holmes Objector Appellants' claim that the Court erred in releasing certain claims for non-monetary relief without permitting objector discovery is likewise baseless. The Court "reviewed voluminous amounts of motions and objections throughout the course of this litigation," prior to holding that "the objectors have failed to present a colorable claim for granting additional discovery." Final Approval Order, at 8-9 [D.E #297]. No reasonable person

could expect that the Court of Appeals will find that the Court abused its discretion in this regard.

Finally, the Holmes Objector Appellants' claim that the Settlement Class was too large or included more persons than mentioned in the "Complaint" has no basis in law or fact. The record supports that the size of the Settlement Class was appropriate, and the Court entered its orders granting preliminary and final approval of the settlement after substantial briefing and motion practice and comprehensive review. Additionally, there is no one "Complaint" in this MDL litigation, and any suggestion that the size of the Settlement Class should have been determined by referencing any one complaint is incorrect. Accordingly, it is not reasonable to expect that this argument, or any of the other arguments the Holmes Objector Appellants indicate they plan to raise on appeal, will succeed and, thus, their appeal is frivolous.

## 2.  The Holmes Appeal Was Brought in Bad Faith

In addition to the meritless nature of the Holmes Appeal, the Holmes Objector Appellants' counsel's statements that the settlement was in the best interest of all but a few of the Holmes Objectors (who would have to opt out), repeated attempts to raise the issue of their attorney fees, and demonstrated willingness to raise any objection, no matter how unsupported by fact or law, in this case and others, support that the Holmes Appeal was brought for an improper purpose and in bad faith.

Prior to and at the August 3, 2009 meeting between Co-Lead Settlement Class Counsel and counsel for the Holmes Objector Appellants, "Mr. Haviland indicated that the settlement was in the best interests of his clients, but for a few who might have to opt out." *See* Affidavit of Burton H. Finkelstein ¶ 2 ("Finkelstein Affidavit"), attached as Exhibit 5 to Representative Plaintiffs' Motion for Bonds; *see also* Affidavit of Ben Barnow ¶ 5 ("Barnow Affidavit"),

attached hereto as Exhibit D. Representative Plaintiffs raised this issue in their Motion for and Incorporated Memorandum in Support of Final Approval, which was filed with the Court on July 6, 2010, and neither the Holmes Objector Appellants nor their counsel disputed this fact prior to or at the Final Fairness Hearing. *See* Representative Plaintiffs' Motion for and Incorporated Memorandum in Support of Final Approval of Class Action Settlement, at 42-43 [D.E. #236]. Nonetheless, Messrs. Haviland's and Hughes' belated denials that Mr. Haviland made such statements are incorrect.[3] *See* Barnow Affidavit ¶ 5; Finkelstein Affidavit ¶ 2.

Neither the Holmes Objector Appellants' nor their counsel dispute that at the meeting between counsel, Mr. Haviland attempted to identify compensation his firm and their affiliated counsel would receive if the Holmes Objectors joined in the settlement. To the extent Messrs. Hughes and Haviland attempt to minimize the emphasis Mr. Haviland placed on such compensation through their declarations, such statements are inaccurate. Barnow Affidavit ¶¶ 6-9; *see also* Finkelstein Affidavit ¶ 5. Moreover, Mr. Hughes' letter requesting that Co-Lead Settlement Class Counsel include the Holmes Objectors' attorneys' request for over $597,000 in purported attorney time, costs, and expenses is instructive. *See* Letter from Robert G. Hughes to Ben Barnow (Aug. 9, 2010), attached as Exhibit 7 to Representative Plaintiffs' Motion for Bonds. Contrary to the Holmes Objector Appellants' assertions, the Hughes letter could not reasonably have been submitted in accordance with a Court Order, as the Court never ordered the Objectors to submit attorneys' time, costs, and expenses to Co-Lead Settlement Class Counsel, nor did the settlement provide for such.

---

[3] Co-Lead Settlement Class Counsel never agreed that any matters discussed at the meeting would be treated as confidential. *See* Barnow Affidavit ¶ 4. To the contrary, at the beginning of the meeting, Mr. Barnow expressly rejected Mr. Haviland's request that the matters discussed at the meeting be treated as confidential. *Id.*

The bad faith nature of the Holmes Appeal is further supported by Mr. Hughes' statement that the purpose of the August 3, 2009 meeting, which occurred over five months after the Holmes Objectors first objected to the settlement, was for Messrs. Haviland and Hughes to "ascertain a better understanding of the settlement," and that at the time of the meeting, they "were open to being convinced that in fact the settlement was in our clients' best interest." Hughes Decl. ¶ 5 [D.E. #321-6]. An objection to a settlement submitted by persons represented by counsel who, by their own admission, do not understand its terms, and who were open to being "convinced" that the settlement is in their clients' best interest, cannot reasonably be characterized as having been brought in good faith.

Mr. Haviland's documented history of delaying and obstructing class action settlements, which he repeats here in this matter, is relevant to and supports that the Holmes Appeal was brought in bad faith. The Holmes Objector Appellants do not dispute that the *Bridgeport Fire Litigation* court stated that, "Mr. Haviland appears to have been trying to seek this information in support of a 'wild goose chase' to prove a self-created theory that the Settlement Agreement was the product of collusion, a theory that has absolutely no basis in fact. Mr. Haviland had no basis to support such an outrageous and manufactured allegation" and that "Mr. Haviland has continuously[] operated to delay and disrupt these proceedings." *See* Order, *In Re Bridgeport Fire Litig.*, Master File No. 05-20924 (Court of Common Pleas, Montgomery County, Pa., Feb. 27, 2009), attached as Exhibit 9 to Representative Plaintiffs' Motion for Bonds. Nor do they dispute that Judge Saris chastised Mr. Haviland for his actions in the *AWP* case, where the court removed Mr. Haviland as class counsel, and stated that "truthfully, at this point, I don't trust you," (*In re: Pharma. Indus. Average Wholesale Price Litig.*, MDL 1456, 2008 WL 53278, **3-5 (D. Mass. Jan. 3, 2008)), or that the *Lupron* court found that Mr. Haviland sent letters

containing vital misrepresentations to class members in that case. Order, *In re: Lupron* (D. Mass. Jan. 26, 2005), attached as Exhibit 10 to Representative Plaintiffs' Motion for Bonds. Such reckless, if not willful, disregard for the rights of class members, in addition to the meritless nature of the issues that the Holmes Objector Appellants present for review, indicates that the Holmes Appeal was brought in bad faith.

**B.  The Silverbach Appeal**

      **1.  The Silverbach Appeal has no Reasonable Expectation of Altering the Court's Judgment Based on Law or Fact and, thus, is Frivolous**

It is difficult to determine what issues the Silverbach Objector Appellants intend to raise on appeal from the unsigned Statement of Parties and Issues they submitted to the Sixth Circuit, which, in addition to improperly identifying their appeal as a cross appeal, contains a one-sentence, boilerplate statement identifying the issue on appeal to be whether the Court erred in granting approval to the settlement. *See* Statement of Parties and Issues, attached hereto as Exhibit E. Regardless, the issues raised by the Silverbach Objector Appellants in this Court make clear that it is unreasonable to expect that the Silverbach Appeal will succeed in the Court of Appeals.

The Silverbach Objector Appellants' argument that the settlement should provide additional and/or different kinds of relief has no reasonable chance of succeeding in the Court of Appeals. As the Court noted in its Opinion and Order granting final approval to the settlement:

> The Court believes this established line of precedent suggests that proceeding through the litigation process in this case is unlikely to produce the plaintiffs' desired results. In contrast, the settlement offers a reasonable resolution that properly addresses the tricky issues presented by data breaches.
>
> . . .
>
> This settlement provides safeguards that would not otherwise be available to millions of people, at a time when such measures are needed most.

Final Approval Order, at 10, 13 [D.E. #297]. Thus, a comparison of the timely and significant relief provided to the Settlement Class under the settlement with the uncertainty of continued litigation, which could reasonably result in Settlement Class Members receiving no recovery, makes clear that the settlement is fair, reasonable, and adequate, and in the best interest of the Settlement Class, and it is unreasonable to expect that the Court of Appeals would find that the Court abused its discretion in so holding.

The Silverbach Objector Appellants' repeated attempts to mischaracterize the substance and significance of comments Judge Mohr made at two status conferences do not detract from the baseless nature of their appeal. Judge Mohr expressed doubts regarding their ability to establish that a class action was the superior method to adjudicate the Silverbach Objector Appellants' case, a fact they do not dispute. Additionally, the Court's analysis of the strength of Settlement Class Members' claims and the fairness, reasonableness, and adequacy of the settlement was based on its comprehensive and prudent review of this litigation, after receiving substantial briefing and hearing argument on a number of occasions. To the contrary, Judge Mohr's statements, which the Silverbach Objector Appellants rely so heavily upon, were made at two status conferences and class certification was never briefed or argued in the Silverbach Objector Appellants' California case.

### 2. The Silverbach Appeal was Brought in Bad Faith

The Silverbach Objector Appellants have submitted cursory filings from the beginning, and the record conclusively refutes their arguments. The Silverbach Objector Appellants, in support of their objections and in opposition to Representative Plaintiffs' Motion for Bonds, attached the Declaration of Michael Murray, an alleged computer security expert, who testified as to the matters covered at the confirmatory discovery depositions of Craig Froelich and

Christopher Higgins, two executives familiar with the data breach.[4] *See* Exhibit 1, Silverbach Appellants' Opposition to Appellees' Motion for Imposition of Appeal Bond [D.E. # 325-1]; Exhibit 2, Weber-Silverbach Objection [D.E. # 184-2]. However, it appears from his affidavit that Mr. Murray never received or reviewed the deposition transcripts, but rather, based his testimony on the Silverbach Objector Appellants' California Complaint, the Notice Settling Plaintiffs' filed with the Court stating that they had complied with the settlement's provisions regarding confirmatory discovery, and the statements of the Silverbach Objector Appellants' counsel, who, despite their repeated objections that more discovery should be conducted in this matter, did not attend or ask questions at the depositions. *Id.* The Silverbach Objector Appellants' failure to provide Mr. Murray with the two deposition transcripts, which would have required minimal effort, supports if not conclusively establishes that, contrary to their assertions, the Silverbach Objector Appellants and their counsel did not spend "significant effort" on their objections and appeal. Even more troubling, however, is the Silverbach Objector Appellants' submission of the report of such an ill-informed expert, which supports that their appeal was brought in bad faith.

### C. The Foligno Appeal

#### 1. The Foligno Appeal has no Reasonable Expectation of Altering the Court's Judgment Based on Law or Fact and, thus, is Frivolous

Representative Plaintiffs have requested that the Court order Kesley Foligno to post an appeal bond because her appeal has no reasonable chance of succeeding in the Court of Appeals, and it will be difficult to collect from Kelsey Foligno any amount the Settlement Class is awarded after prevailing on appeal. Objector Kelsey Foligno, an attorney, has provided no legal

---

[4] Craig Froelich, was Senior Vice President, Technology Security, at Countrywide at the time of the theft of the Private Information, and Christopher Higgins, whose positions included at the time of his deposition, Chief Information Security Officer, Business Continuity and Crises Management Executive, Chair of the Global Technology Counsel, and member of the Operational Compliance and Risk Counsel at Bank of America.

11

or factual support for her claims, which have no basis in law or fact, and did not address or oppose the frivolous nature of her appeal in the letter she submitted to the Court requesting that Representative Plaintiffs' Motion for Bonds not be granted. Regardless, Representative Plaintiffs' request for a bond is not, as Ms. Foligno suggests, based on the fact that her original objection contained typographical errors or her failure to appear at the Final Fairness Hearing.

### 2. Kelsey Foligno is an Attorney Who is Represented by an Attorney, Yet Presents her Appeal as *pro se*

Kelsey Foligno's retention of attorney Christopher Bandas, an experienced objector's counsel, could reasonably be interpreted as supporting that her appeal was brought in bad faith.[5] A *pro se* filing may be seen as providing certain advantages to the filer, even when they are an attorney, such as Kelsey Foligno. One readily visible advantage is that the patina of professional objection status is avoided. The letters issued by the Clerk's Office, Sixth Circuit Court of Appeals, illustrate that an additional advantage is that appellants represented by counsel must file an Appearance of Counsel, Civil Appeal Statement of Parties and Issues, and Disclosure Statement with the Circuit Court of Appeals by a certain deadline (which would have been October 13, 2010, in the case of Kelsey Foligno), or risk having their appeal dismissed for want of prosecution, whereas such filings are not required of *pro se* appellants.

### D. The Baker Appeal

### 1. The Baker Appeal has no Reasonable Expectation of Altering the Court's Judgment Based on Law or Fact and, thus, is Frivolous

The Baker Appeal has no reasonable expectation of altering the Court's judgment based on law or fact and, is likewise, frivolous. The issues Objector Baker raised in this Court—alleged lack of adequate notice, amount of benefits provided to the Settlement Class by the settlement,

---

[5] Subsequent to the filing of Representative Plaintiffs' Motion for Bonds, Kelsey Foligno advised one of Co-Lead Settlement Class Counsel that she was represented by attorney Christopher Bandas.

and amount of attorneys' fees—have no reasonable expectation of succeeding in the Court of Appeals, which will review the Court's Final Approval Order under an abuse of discretion standard. Objector Baker's unsupported assertion that his appeal is not frivolous does not rebut this fact.

### 2. The Baker Appeal was Brought in Bad Faith

The lack of care, the lack of diligence, and the blatant disregard for Court-imposed deadlines demonstrated by Objector Baker and his counsel in this matter and others supports that his appeal was brought in bad faith. Thomas Cox, Objector Baker's counsel, is a professional objector's counsel, a fact Objector Baker does not deny. Despite advising the Court of his intent to appear, Mr. Cox failed to appear at the Final Fairness Hearing. Additionally, after the Clerk's Office, Court of Appeals for the Sixth Circuit, instructed Objector Baker's counsel to file an Appearance of Counsel, Civil Appeal Statement of Parties and Issues, Transcript Order Form, and Disclosure Statement with the Sixth Circuit on or before October 12, 2010, Objector Baker's counsel waited until October 22, 2010, to file an Appearance and November 2, 2010, to file the other documents. *See* Letter from Clerk's Office, Sixth Circuit Court of Appeals, to Counsel (Sept. 28, 2010) and Docket Statement, attached hereto as Group Exhibit F. Moreover, Objector Baker's response to Representative Plaintiffs' Motion for Bond was filed fourteen days late, on November 15, 2010, the date Representative Plaintiffs' Reply was due.[6] Although Objector Baker concedes that a court may include attorneys' fees in appeal bonds when a fee shifting statute is at issue, he fails to address, rebut, or even acknowledge the applicable fee shifting statute at issue in this matter, which entitles the Court to include attorneys' fees in any bond amount, and fails to cite to even one Sixth Circuit case or the law governing Plaintiffs' Motion

---

[6] By responding to Objector Baker's late filing made without leave of Court or a motion requesting leave, Representative Plaintiffs do not waive any rights regarding the untimely nature of his filing, including any objections thereto.

for Bonds. Such a lack of care, diligence, and disregard for Court-imposed deadlines are the hallmarks of an objector appellant represented by a professional objector's counsel, such as Mr. Cox, and of an appeal brought in bad faith.

### E.   The Scott Appeal has no Reasonable Expectation of Altering the Court's Judgment Based on Law or Fact and, thus, is Frivolous, and was Brought in Bad Faith

The Scott Objectors, with their professional objector's counsel, did not bother to oppose Representative Plaintiffs' Motion for Bonds. This, of course, follows their counsel's failure to appear at the Final Fairness Hearing despite the Scott Objectors' attorney, Mr. Palmer, representing to the Court that he would appear at the Final Fairness Hearing. Scott Objection, at 1. The Scott Objectors' inaction in this regard further supports the frivolous and bad faith nature of their appeal.

### IV.   Objector Appellants' Financial Ability to Post the Requested Appeal Bonds

Courts presume appellants are financially able to post appeal bonds unless they demonstrate otherwise. *See Adsani v. Miller,* 139 F.3d 67, 79 (2d Cir. 1998) ("[W]e find that without any showing of her financial hardship, the bond imposed on Adsani is not an impermissible barrier to appeal . . . ."). Absent a showing of financial hardship, there is no chilling effect on the rights of the appellants because there is "no deterrent to appeal in the first place" and the Court "has not frustrated the review process." *Id.*; *Tri-Star Pictures, Inc. v. Unger*, 32 F. Supp. 2d 144, 148 (S.D.N.Y. 1999), *aff'd,* 198 F.3d 235 (2d Cir. 1999). None of Objector Appellants have asserted they are financially unable to post the requested appeal bonds. Accordingly, this factor favors imposition of the requested appeal bonds.

### V.   The Risk of Non-Payment is Significant

A significant risk of non-payment exists, as Objector Appellants reside throughout the country and have not offered to guarantee payment of costs that might be assessed against them. *In re Initial Pub. Offering Sec. Litig.*, 2010 WL 2505677, at *2; *see also In re Currency*

*Conversion Fee Antitrust Litig.*, MDL 1409, 2010 WL 1253741, *2 (S.D.N.Y. Mar. 5, 2010) (same). Contrary to the Silverbach Objectors' assertion that Co-Lead Settlement Counsel know who their attorneys are, this does not rebut the fact that Objector Appellants, not their counsel, will be obligated to pay any amount imposed at the conclusion of their appeal.

## VI.  Applicable Law Supports that Anticipated Attorneys' Fees Should be Included in the Requested Appeal Bond Amounts

When reviewing a motion requesting the imposition of an appeal bond pursuant to Fed. R. App. P. 7, courts "are required to determine what sums are 'properly awarded under the relevant substantive statute or other authority.'" *Cardizem*, 391 F.3d at 817 (quoting *Marek v. Chesny*, 473 U.S 1, 9 (1985)). In *Cardizem*, the Sixth Circuit looked to the language of the underlying statute in holding that "not only was the district court entitled to include in the bond amount attorney's fees, but it was entitled to include any other damages incurred, presumably including administrative costs."[7] 391 F.3d at 817-18. Similarly, here, the Fair Credit Reporting Act, one of the underlying statutes, provides that upon finding that a filing was "in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper." 15 U.S.C. § 1681n(c); 15 U.S.C. § 1681o(b) (same). Thus, the Court is entitled to include attorneys' fees in the requested appeal bond amounts, and the Holmes Objectors' argument to the contrary is incorrect.

Similarly, the Sixth Circuit expressly rejected the Holmes Objectors' argument that the Court should look to whether the underlying statute defines attorneys' fees as costs, in holding: "*Marek* does not require that the underlying statute provide a definition for 'costs.' Rather,

---

[7] Tenn. Code Ann. § 47-18-109, the underlying statute at issue in *Cardizem*, provided that "upon finding that the action is frivolous, without legal or factual merit, or brought for the purpose of harassment, the court may require the person instituting the action to indemnify the defendant for any damages incurred, including reasonably attorney's fees and costs." *Cardizem*, 391 F.3d at 817.

15

*Marek* requires a court to determine which sums are 'properly awardable' under the underlying statute, and to include those sums as 'costs' under the procedural rule." *Cardizem*, 391 F.3d at 818 n.4 (quoting *Marek*, 473 U.S. at 9).

## VII. Conclusion

Respectfully, the frivolousness of the Objector Appeals and the conduct of Objector Appellants and their counsel leaves little question regarding the propriety of granting Representative Plaintiffs' Motion for Bonds. The Holmes Objectors' counsel's attempts to escape their position through their declarations, which include misstatements of fact, in addition to their prior history in this case and others, only exacerbates their situation. Objector Kelsey Foligno's retention of an attorney calls into question the appropriateness of her continuing to proceed before the Court and the Sixth Circuit as *pro se*. Objector Kelsey Foligno, an attorney, has failed to present any serious support for her objections, the substance of which displays either a gross lack of knowledge regarding applicable law or a disregard of it. Although the Silverbach Objectors' counsel are clearly disgruntled over their inability to proceed with their California case, their angst over that situation is not a valid reason for delaying Settlement Class Members' receipt of the benefits provided for under the settlement. Objector Baker's lack of care and willful disregard for Court-imposed deadlines and their counsel's status as a professional objector's counsel, in addition to the frivolous nature of the issues they present for appeal, make clear the improper purpose of the Baker Appeal. Additionally, the Scott Objectors failed to oppose Representative Plaintiffs' Motion for Bonds; their counsel continues to follow the professional objector's counsel's practice of filing just enough to allow them to appeal. Such conduct, in addition to the frivolous nature of their papers and their counsel's failure to appear at the Final Fairness Hearing, evidence a blatant disregard for the rights of the Settlement Class. It

is respectfully suggested that the Objectors' counsel's conduct is in accordance with the Court's recognition that "a cottage industry has developed of professional objectors, where . . . the emphasis or at least the primary motivation is attorneys' fees." Memo Op. and Order, at 3 (W.D.K.Y. Aug. 24, 2010) [D.E. #302].

For the reasons set forth herein, Objector Appellants' posting of appeal bonds is justified and appropriate. Therefore, Representative Plaintiffs, individually and on behalf of the Settlement Class, by and through Co-Lead Settlement Class Counsel, respectfully pray that this Honorable Court enter an order:

(a) Requiring Objector Appellants to post appeal bonds in the following amounts: Objector Kelsey Foligno ($10,000); Objector Baker ($25,000); Scott Objectors ($25,000); Holmes Objectors ($50,000); and Silverbach Objectors ($50,000); and

(b) Granting such other and additional relief as the Court may deem just and appropriate.

Dated:  November 15, 2010

Respectfully submitted,

*Co-Lead Settlement Class Counsel*

   /s/  Ben Barnow
Ben Barnow
Barnow and Associates, P.C.
One North LaSalle Street, Suite 4600
Chicago, IL  60602
(312) 621-2000

Burton H. Finkelstein
Finkelstein Thompson LLP
The Duvall Foundry
1050 30th Street, N.W.
Washington, D.C. 20007
(202) 337-8000

*Plaintiffs' Liaison Counsel*

Mark K. Gray
Franklin Gray & White
505 W. Ormsby Ave.
Louisville, KY 40203
(502) 637-6000

**<u>Certificate of Service by Electronic Means</u>**

I, Ben Barnow, hereby certify that the foregoing document was caused to be served electronically this 15th day of November, 2010, pursuant to ECF as to Filing users, and I shall serve a copy of same via U.S. Mail to any party who is not a filing user or represented by a filing user.


/s/  Ben Barnow _____


19