UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

IN RE: COUNTRYWIDE FINANCIAL CORP.
CUSTOMER DATA SECURITY BREACH
LITIGATION

CASE NO: 3:08-MD-01998
MDL No. 1998

_____

This document relates to:

ALL ACTIONS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Representative Plaintiffs'[1] Motion for Imposition of Appeal Bonds (Docket #318). Countrywide has responded (Docket #320). The Haviland-Hughes-Represented Objectors[2] have responded (Docket #321). Nicholas and Kelsey Foligno have responded (Docket #322). The Silverbach Appellants[3] have responded (Docket #324). Patrick Baker has responded (Docket #329). Representative Plaintiffs have replied (Docket #334). This matter is now ripe for adjudication. For the following reasons, Representative Plaintiffs' motion is DENIED

## BACKGROUND

On January 21, 2009, Plaintiffs Thomas A. Munz, Scott Gregg, Matthew B. Martin,

---

[1] Representative Plaintiffs are Cody M. Dragon, Laila Elkhettab, Jay B. Gaumer, Scott Gregg, Matthew B. Martin, Harold L. Mooney, Edmund Moses, Thomas A. Munz, Michael J. Rich, and Kim Wickman.

[2] The Haviland Hughes-Represented Objectors are Geoffrey and Melissa Hammons, Daniel and Rhonda Ruark, Paul J. and Marla Vido, James and Brenda Wright, Fred and Sheila McCoy, Mark and Lynisa Getzinger, Todd Loeb, Michael and Barbara Davenport, Jerry and Lydia Albert, Christopher and Robin Lierman, and Renee Seal.

[3] The Silverbach Appellants are Spencer Silverbach, Vicki Silverbach, and Shabeer Thomas.

Edmond Moses, Harold L. Mooney, Laila Elkhettab, Jay Gaumer, and Kim Wickman filed a Motion for Settlement in this action, which requested class certification, preliminary approval of the settlement and notice plan, and the setting of a final fairness hearing. The Proposed Settlement resulted in objections filed by the Holmes Plaintiffs, the Martin Plaintiffs, and the Weber/Silverbach Plaintiffs.

The Court issued an Order on the Settling Plaintiffs' Motion on June 30, 2009. That Order expressed that the Court was prepared to grant preliminary approval of the settlement with regard to the 2.4 million proposed class members who received a letter from Countrywide concerning the data breach, but the proposed notice plan was inadequate for the remaining class members since it did not satisfy the requirement of Federal Rule of Civil Procedure 23(c)(2)(B) that individual notice be given "to all members who can be identified through reasonable means."

Settling Parties filed a Second Amendment to the Settlement Agreement on July 24, 2009. This amendment set forth a Revised Proposed Notice Plan, which replaced the previously-filed and inadequate Proposed Notice Plan. The Holmes and Martin Plaintiffs filed objections to the new Plan. Settling Parties also filed a Third Amendment to the Settlement agreement on September 4, 2009, which amended the definition of the Settlement Class. The Court reviewed the amendments and granted preliminary approval of the settlement. The Court further approved the revised notice plan and appointed Ben Barnow, Barnow and Associates, P.C., and Burton H. Finkelstein, Finkelstein Thompson LLP, as co-lead class counsel.

On July 7, 2010, Representative Plaintiffs filed a motion for final approval of the class action settlement and for attorney's fees, costs, expenses, and incentive awards. The Court held

a final fairness hearing on July 19, 2010. Eighty-nine objections were filed with the Court. The Court reviewed those objections and invited all persons present at the final fairness hearing to comment or object. The Court heard from five objectors and one witness. On August 23, 2010, the Court issued a Judgment Order and Memorandum Opinion approving the settlement and awarding attorney's fees, incentive awards, costs and expenses.

The Haviland Hughes-Represented Objectors (formerly the Holmes Objectors) filed a notice of appeal on September 16, 2010. Objector Kelsey Foligno filed a notice of appeal on September 17, 2010, which was amended on September 22, 2010, to add Nicholas Foligno as a party. Patrick Baker filed a notice of appeal on September 20, 2010. The Silverbach Appellants filed a notice of appeal with the Court on September 22, 2010. The Scott Objectors[4] filed their notice of appeal on that same date. These matters are currently on appeal to the Sixth Circuit. Representative Plaintiffs filed their present motion for imposition of appeal bonds on October 6, 2010. The Court now considers this motion.

## STANDARD

Under Federal Rule of Appellate Procedure 7, "the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. This matter is left to the district court's discretion. *See, e.g.*, *Lundy v. Union Carbide Corp.*, 598 F. Supp. 451, 452 (D. Or. 1984) (citing *Fed. Prescription Serv., Inc. v. Am. Pharm. Assoc.*, 636 F. 2d 755 (D.C. Cir. 1980)). The district court should consider: "'(1) the appellant's financial ability to post a bond, (2) the risk that the

---

[4] The Scott Objectors are Winfield C. Scott, Barbara A. Scott, Myra E. Simmons-Homer, John M. Calder and Peggy A. Calder.

appellant would not pay appellee's costs if the appeal loses, (3) the merits of the appeal, and (4) whether the appellant has shown any bad faith or vexatious conduct.'" *Chiaverini, Inc. v. Frenchie's Fine Jewelry, Coins & Stamps, Inc.*, No. 04-CV-74891-DT, 2008 WL 2415340, at *1 (E.D. Mich. June 12, 2008) (quoting *Baker v. Urban Outfitters, Inc.*, No. 01 Civ. 5440, 2006 WL 3635392, at *1 (S.D.N.Y. Dec. 12, 2006)).

The costs referenced by Rule 7 are contained in 28 U.S.C. § 1920 and Federal Rule of Appellate Procedure 39. *See In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 816 (6th Cir. 2004); *Chiaverini*, 2008 WL 2415340 at *1 (citing 20 MOORE'S FEDERAL PRACTICE § 307.10[2], at 307-6 (3d ed. 2003)).  Rule 39 provides that the following costs are taxable: "(1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal." Fed. R. App. P. 39(e).  "The costs taxable under § 1920 include the marshal and clerk fees, court reporter fees, printing and witness fees, copying fees, docket fees, and compensation of court appointed experts and interpreters." *Chiaverini*, 2008 WL 2415340 at *1.

The district court looks to the underlying statutes involved in the litigation to determine if attorney's fees may be included as "costs." *See In re Cardizem*, 391 F.3d at 817; *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002) ("[T]he meaning of 'costs,' as used in Rule 7, should be derived from the definition of costs contained in the statutory fee shifting provision that attends the plaintiff's underlying cause of action.").

## DISCUSSION

Representative Plaintiffs seek the following in appeal bonds: $10,000 from Objectors

Kelsey and Nicholas Foligno; $25,000 from Objector Patrick Baker; $25,000 from the Scott Objectors; $50,000 from the Haviland Hughes-Represented Objectors; and $50,000 from the Silverbach Appellants.[5] Representative Plaintiffs have the "burden of justifying the amount of [their] request or providing a reasonable estimate of the actual costs [they] may incur on appeal." *Chiaverini*, 2008 WL 2415340 at *2 (citing *Lundy*, 598 F. Supp. at 452). Representative Plaintiffs state that the requested amounts include attorney's fees and costs beyond the approximately $5,000 in anticipated costs already awarded by the Court. *See* Memorandum Opinion, DN 297, p. 20. Further, Representative Plaintiffs attribute the discrepancies in requested amounts "to the number of issues raised," since "more resources will be required to respond to appeals where more issues must be addressed." The Court finds that Representative Plaintiffs have failed to present a reasonable estimate of actual costs that might be incurred because of the aforementioned appeals. Even if Representative Plaintiffs had provided a reasonable estimate, however, the Court finds that the imposition of appeal bonds is unnecessary in this case.

**I.     Bond**

*Chiaverini* identifies four factors the Court should consider when determining whether the imposition of an appeal bond is appropriate. First, the Court looks at "the appellant's financial ability to post a bond." *Chiaverini*, 2008 WL 2415340, at *1. None of the objectors indicated an inability to post the requested appeal bonds. Thus, this factor weighs in favor of a bond.

---

[5]Since the filing of Representative Plaintiffs' motion on October 6, 2010, the appeals of Kelsey and Nicholas Foligno (*see* DN 335) and the Scott Objectors (*see* DN 336) have been voluntarily dismissed.

Next, the Court examines "the risk that the appellant would not pay appellee's costs if the appeal loses." *Id.* Representative Plaintiffs believe a significant risk exists because the objectors reside throughout the country, have not guaranteed payment of any costs, and Representative Plaintiffs would be required to institute several collection actions in numerous jurisdictions if costs are awarded on appeal. In support of this argument, Representative Plaintiffs cite to two class action cases in which the Southern District of New York found that Representative Plaintiffs' stated reasons demonstrate a significant risk of nonpayment. *See In re Initial Public Offering Sec. Litig.*, No. 21 MC 92(SAS), 2010 WL 2884794, at *2 (S.D.N.Y. July 20, 2010); *In re Currency Conversion Fee Antitrust Litig.*, No. M 21-95, MDL No. 1409, 2010 WL 1253741, at *2 (S.D.N.Y. Mar. 5, 2010).[6] The Court believes the same logic applies to this case. Accordingly, the Court finds that this factor weighs in favor of imposing a bond.

Third, the Court looks to the merits of the objectors' appeals. The standard of review for approval of a class action settlement is abuse of discretion. *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008). "Factual findings regarding notice are reviewed for clear error." *Id.* (citing *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 942 (10th Cir. 2005)). In this case, the Court reviewed extensive briefs and considered many arguments more than once before preliminarily approving the settlement. Furthermore, the Court heard additional objections through briefs, letters, and at the final fairness hearing prior to final approval. The objecting parties appear to make the same arguments on appeal in regards to

---

[6]Other cases demonstrating a risk of nonpayment involve prior nonpayment, an intention to file for bankruptcy, a "shell corporation," or a foreign appellant. *See In re AOL Time Warner, Inc., Securities and "Erisa" Litig.*, No. 02 Cv. 5575(SWK), 2007 WL 2741033, at *2 (S.D.N.Y. Sept. 20, 2007) (citing several cases).

insufficient relief, collusion, lack of discovery, differentiations among class members, adequacy of notice, and excessive attorney's fees. The Court obviously disagrees with the issues raised by the objectors and believes these arguments lack merit and will not succeed on appeal. Because of the novelty of this area of law, however, the Court acknowledges that some of the objectors' arguments present substantive issues that may at least warrant additional consideration on appeal. *See Chiaverini*, 2008 WL 2415340, at *2 (district court noting that although it disagrees with the plaintiff's claims on appeal, "the claims raised are viable and substantial issues"). Accordingly, the Court believes this factor is neutral.

Finally, the Court considers "whether the appellant has shown any bad faith or vexatious conduct." *Id.* at *1. Representative Plaintiffs argue that the attorneys representing the appellants are "professional objectors" who have unnecessarily delayed the conclusion of this litigation. Representative Plaintiffs make specific arguments as to the prior conduct of Mr. Donald Haviland, of the Haviland Hughes-Represented Objectors, and Mr. Thomas L. Cox, Jr., who represents Objector Patrick Baker. Further, Representative Plaintiffs argue that the Silverbach Objectors' conduct throughout this litigation has been littered with instances of bad faith, from presenting inaccurate statements in their briefs, to not attending depositions and then objecting to the lack of discovery, to cutting and pasting arguments the Court had already considered into additional motions in an effort to delay these proceedings. While the Court believes there may be some merit to these arguments, the Court declines to delve into these issues at this time. Even without consideration of the fourth factor, the Court finds that the other factors sufficiently weigh in favor of appeal bonds as to all objectors.

## II.     Costs Covered by the Appeal Bonds

An appeal bond may only include attorney's fees as costs where an underlying statute in the case contains a fee shifting provision. Representative Plaintiffs argue that two provisions of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681n(c) and 15 U.S.C. §1681o(b), are fee shifting provisions that make the inclusion of attorney's fees in the request for appeal bonds appropriate. Section 1681n(c) provides:

> Upon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

15 U.S.C. § 1681n(c). This portion of the section governs civil liability for willful noncompliance. 15 U.S.C. § 1681n(a). Section 1681o(b) contains virtually identical language and governs civil liability for negligent noncompliance. *See* 15 U.S.C. § 1681o(a)-(b). Representative Plaintiffs argue that the current appeals were filed in bad faith and for purposes of harassment, in accordance with the fee shifting statutes.

The Haviland Hughes-Represented Objectors argue that Representative Plaintiffs ignore other portions of the FCRA which distinguish costs and attorney's fees. *See* 15 U.S.C. § 1681n(a)(3); 15 U.S.C. § 1681o(a)(2). However, the Sixth Circuit in *Cardizem* expressly rejected such an argument. 391 F.3d at 818 n. 4 (holding that the underlying statute need not define costs; rather, the court must determine which sums are "properly awardable" under the underlying statute as costs). In *Cardizem*, the Sixth Circuit dealt with a statute containing similar language to § 1681n(c). The Tennessee statute in that case stated, in pertinent part: "In any private action commenced under this section, upon a finding that the action is frivolous, without legal or factual merit, or brought for the purpose of harassment, the court may require

8

the person instituting the action to indemnify the defendant for any damages incurred, including reasonable attorney's fees and costs." Tenn. Code Ann. § 47-18-109(e)(2). The Sixth Circuit held that since the district court had determined the appellant's objections to a proposed settlement were without merit, the district court was entitled to include attorney's fees in the appeal bond. *Id.* at 817-18. The statutes before this Court differ slightly from the Tennessee statute in that the FCRA statutes only award attorney's fees for work related to responding to a "pleading, motion, or other paper" made "in bad faith or for purposes of harassment," rather than awarding fees for the entire action. *See* 15 U.S.C. § 1681n(c).

The standard "in bad faith or for purposes of harassment" requires the Court to find that the objecting parties filed their appeals either with subjective bad faith, or they "filed an action that was frivolous, unreasonable, or without foundation." *Smith v. HM Wallace, Inc.*, No. 08-22372-CIV, 2009 WL 3179539, at *2 (S.D. Fla. Oct. 1, 2009). "Bad faith is 'not simply bad judgment or negligence, but implies the conscious doing of a wrong because of a dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will.'" *Shah v. Collecto, Inc.*, No. Civ.A.2004-4059, 2005 WL 2216242, at *14 (D. Md. Sept. 12, 2005) (quoting *Black's Law Dictionary* 139 (6th ed. 1990)). The Court applies its bad faith analysis to the time the document was filed. "It is not enough to show that the 'pleading, motion, or other paper' in question 'later turned out to be baseless.'" *Rogers v. Johnson-Norman*, 514 F. Supp. 2d 50, 52 (D.D.C. 2007) (quoting *Ryan v. Trans Union Corp.*, No. 99-216, 2001 WL 185182, at *6 (N.D. Ill. Feb. 26, 2001)).

Other courts have found bad faith in this context in cases where a plaintiff's pleadings were clearly deficient and falsified, *Williams v. Experian Info. Solutions*, No. 3:09-CV-1146-L,

9

2010 WL 572098, at *1-2 (N.D. Tex. Feb. 10, 2010), a plaintiff was given an opportunity to amend a factually deficient complaint and failed to do so, *Bonner v. Redwood Mortg. Corp.*, No. C 10-00479 WHA, 2010 WL 2528962, at *4 (N.D. Cal. June 18, 2010), and a plaintiff brought suit despite "a blatant act of dishonesty" that should have prevented him from filing suit in the first place, *Shipley v. Trans Union Corp.*, No. C04-2560P, 2006 WL 1515594, at *3 (W.D. Wash. May 25, 2006). Courts have also found bad faith where, prior to filing a lawsuit, a plaintiff had documentation in her possession that directly contradicted her claims, so that she should have known her action was frivolous. *See Mayle v. Equifax Info. Servs., Inc.*, No. 03 CV 8746, 2006 WL 398076, at *2 (N.D. Ill. Feb. 14, 2006). The Court cannot conclude that the objectors' conduct rises to this level, or that the Court of Appeals will necessarily determine that the objectors filed their appeals in bad faith. There is no direct evidence of ill will or dishonest purpose. Further, there is no obvious indication that the objectors should know their arguments are frivolous. Although the Court may disagree with the arguments made on appeal, and the objectors clearly disagree with this Court's decisions, the purpose of the appeals process is to permit objectors to challenge such rulings. Accordingly, the Court cannot definitively say that the present appeals were filed for purposes of harassment or in bad faith, and believes this matter is best left to the discretion of the Sixth Circuit. For this reason, the Court will not include attorney's fees as costs in the appeal bonds.

    Without the inclusion of attorney's fees, the Court believes that the imposition of appeal bonds becomes unnecessary. The Court has already awarded approximately $5,000 in

anticipated costs, which should cover any costs on appeal.[7]  Any further awards for costs or attorney's fees shall be addressed by the Court of Appeals.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Representative Plaintiffs' Motion for Imposition of Appeal Bonds is DENIED.

---

[7]Representative Plaintiffs have failed to demonstrate a need for an award of additional costs beyond the $5,000 the Court has already awarded.